FILED
United States Court of Appeals
Tenth Circuit

June 11, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEAN C. ROSENFIELD,

        Plaintiff-Appellant,

v.

HSBC BANK, USA; STEPHANIE Y. O'MALLEY, as Public Trustee for the City and County of Denver,

        Defendants-Appellees.

No. 10-1442

---

CONSUMER FINANCIAL PROTECTION BUREAU; AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION; CONSUMER MORTGAGE COALITION,

        Amici Curiae

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:10-CV-00058-MSK-MEH)**

---

John G. Nelson of the Law Office of John G. Nelson, Denver, Colorado, for Plaintiff-Appellant.

Mark C. Willis (Kelly S. Kilgore, with him on the brief) of Kutak Rock, LLP, Denver, Colorado, for Defendant-Appellee HSBC Bank, USA.

Patrick A. Wheeler of the Office of the Denver City Attorney, for Defendant-Appellee Stephanie Y. O'Malley.

David M. Gossett, Assistant General Counsel, Leonard J. Kennedy, General Counsel, To-Quyen Truong, Deputy General Counsel, Rachel Rodman, Senior Counsel, and Peter G. Wilson and Kristen Bateman, Attorneys, filed an amicus brief on behalf of the Consumer Financial Protection Bureau.

Jeffrey P. Naimon, Kirk D. Jensen, and Michael R. Williams of BuckleySandler LLP filed an amicus brief on behalf of the American Bankers Association, Consumer Bankers Association, and Consumer Mortgage Coalition.

---

Before **HOLMES**, **EBEL**, and **MATHESON**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Plaintiff-Appellant Jean Rosenfield appeals from the district court's order granting a motion to dismiss filed by Defendant-Appellee HSBC Bank, USA ("HSBC"). Ms. Rosenfield brought claims seeking declaratory and injunctive relief, and damages against HSBC for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, averring that her lender failed to make required disclosures in a residential loan refinancing agreement executed by the parties, and that, as a result, she is entitled to a rescission of her loan agreement. Ms. Rosenfield argues that the district court erred in dismissing her claims and holding that she failed to timely exercise her right of rescission within the applicable three-year time bar specified by TILA. For the reasons that follow, we affirm the district court's order dismissing Ms. Rosenfield's complaint.

-2-

# I. Background and Procedural History[1]

In 1998, Ms. Rosenfield and her husband purchased a home in Denver, Colorado. On October 10, 2006, she applied to Ownit Mortgage Solutions, Inc. ("Ownit") to refinance an existing loan on the home. Mr. Rosenfield was not a party to the refinancing. He quitclaimed all of his right, title, and interest in the property to Ms. Rosenfield. The loan was closed by a designated title company on November 3, 2006.[2] The loan was subsequently sold or assigned to HSBC. Ms. Rosenfield believed that, in connection with the loan, the original lender violated several federal statutes—specifically, TILA; the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639; and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617—as well as state law. More importantly for purposes of this appeal, she claimed that required disclosures attendant to the transaction were omitted, including, *inter alia*, information on rescission rights, adjustable rates, and finance charges. On September 9, 2008, Ms. Rosenfield sent a "Notice of Rescission to the lender" and, according to her complaint, effectively "rescinded the loan transaction at

---

[1] Because Ms. Rosenfield's complaint was dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts here are set forth substantially as they appear in the complaint.

[2] The financing consisted of two mortgages, but only the first mortgage is at issue in this case. The first mortgage was structured with a fifty-year term and had an adjustable interest rate. Its face amount was $388,000. The average percentage rate on the mortgage, including interest, fees, costs, and all other charges, was 10.542 percent.

issue in this case." Aplt. App. at 4 (Pl.'s Compl., filed Dec. 21, 2009). She received no response.

Presumably because Ms. Rosenfield failed to continue meeting her obligations under the loan agreement, HSBC instituted foreclosure proceedings on July 9, 2009, by filing a Motion for Order Authorizing Sale in the District Court for the City and County of Denver "under the expedited procedure" set forth in Rule 120 of the Colorado Rules of Civil Procedure (the "Rule 120 proceeding"). *Id.* In Ms. Rosenfield's response to the foreclosure action, she asserted a "defense of rescission," Aplt. Opening Br. at 5, averring that she "sent a Notice of Rescission to HSBC . . . [and she] received no response," Dist. Ct. Doc. 55, Attach. 25, at 4 (Resp. to Verified Mot., filed Apr. 1, 2010). The District Court for the City and County of Denver, however, held that she could not assert this defense under the "pared-down procedure" provided by Rule 120. Aplt. App. at 38 (Pl.'s Resp. to Def.'s Mot. to Dismiss, filed Feb. 22, 2010). HSBC scheduled a foreclosure sale for December 31, 2009 with the office of Defendant-Appellee Stephanie O'Malley, the city's public trustee.

On December 21, 2009, Ms. Rosenfield commenced this action in the District Court for the City and County of Denver. As relevant here, Ms. Rosenfield's complaint asserted two claims for relief against HSBC based upon her alleged right to rescind the loan in light of various disclosure violations under TILA and its implementing regulations, 12 C.F.R. §§ 226.1–.59 ("Regulation

-4-

Z").[3]  Specifically, Ms. Rosenfield first sought a declaratory judgment "that the mortgage on her home has been rescinded" and HSBC is "not entitled to proceed with any foreclosure." Aplt. App. at 4–5.  In her second cause of action, Ms. Rosenfield requested preliminary and permanent injunctive relief against HSBC, enjoining it from selling her home, as well as a "mandat[e]" that HSBC release the deed of trust on the property and "withdraw all negative credit reports made with respect to th[e] loan . . . following [a] rescission." *Id.* at 5–6.  On January 12, 2010, HSBC removed the case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1441(a), asserting jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Shortly thereafter, on January 27, 2010, HSBC filed a motion to dismiss Ms. Rosenfield's complaint pursuant to Rule 12(b)(6), arguing that the complaint

---

[3]  We pause to clarify the scope of Ms. Rosenfield's challenge on appeal.  First, in her complaint, she brought a claim under RESPA; however, the district court noted, and Ms. Rosenfield does not allege otherwise on appeal, that there is no RESPA issue in this case.  In fact, Ms. Rosenfield appears to challenge the district court's order only with respect to her TILA-related claims.  *See, e.g.*, Aplt. Opening Br. at 1–2 (framing the questions presented in the context of whether the district court was correct in dismissing her claims for relief under TILA).  Next, Ms. Rosenfield also brought a claim under HOEPA.  However, HOEPA is just an amendment to TILA itself, Aplt. App. at 5, and Ms. Rosenfield does not argue that HOEPA specifically has any bearing on this appeal.  Finally, Ms. Rosenfield also brought a claim for damages but the district court dismissed it as untimely.  Ms. Rosenfield admits that she is not raising an averment of error on appeal as to that claim.  *See* Aplt. Reply Br. at 15 (noting that there is "no claim regarding damages . . . at issue in this appeal" (capitalization altered)).  Consequently, we narrow our focus on appeal to the allegations relating to Ms. Rosenfield's request for injunctive and declaratory relief under TILA.

failed to state a claim upon which relief may be granted both on the merits of the inadequate disclosure allegations and because the claims were procedurally barred under TILA. On August 31, 2010, the district court granted HSBC's motion and dismissed the complaint in its entirety. The district court noted that "TILA sets an absolute three-year limitation on the borrower's right of [r]escission, measured from the closing of the transaction." Aplt. App. at 61 (Dist. Ct. Op. & Order Granting Mot. to Dismiss, filed Aug. 31, 2010) (citing 15 U.S.C. § 1635(f)). It dismissed Ms. Rosenfield's claims for declaratory and injunctive relief because she filed the instant action outside of the three-year statutory period provided in § 1635(f).

Although Ms. Rosenfield alleged in her complaint that she provided her lender with written notice of rescission within the three-year period under TILA, the district court determined that the Supreme Court's decision in *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), establishes that § 1635(f) is a statute of repose that extinguishes a claim for rescission, unless it is both noticed *and* sued upon within three years. As the district court explained, "[t]o hold otherwise introduces a lacuna between the expiration of the right to rescind and the time in which the lender might learn of a purportedly timely [r]escission that it does not recall receiving, with foreclosure (and perhaps even subsequent sale) falling within that temporal no-man's-land." Aplt. App. at 63. In other words, banks must be protected from the possibility that a foreclosed home could have a

-6-

"cloudy title" because of a delayed rescission claim by a borrower.

Additionally, the district court rejected Ms. Rosenfield's argument that her assertion of the defense of rescission in her answer to the Rule 120 proceeding properly preserved her rights in the instant action. The court reasoned that "simply asserting the 'defense' of [r]escission in a Rule 120 proceeding is . . . not the equivalent of [asserting the right in general] civil lawsuit[s]," *id.* at 65–66, because of the limited purpose and effect of Rule 120 proceedings, and the limited procedures made available for litigants. In this connection, the court noted that Ms. Rosenfield had not relied in her complaint on the date of her assertion of the rescission defense in the Rule 120 proceeding to support her contention that her rescission right was still viable, but rather the date of written notice to the lender. And the court declined "to re-draft the Complaint in order to rescue the Plaintiff from the untimeliness of the claims as actually pled," *id.* at 66–67, and refused Ms. Rosenfield's request to permit amendment of her complaint.

Finally, the district court concluded in the alternative that even if Ms. Rosenfield's rescission claims were viable under TILA's statute of repose, they would still be barred by application of TILA's *one*-year statutory limitations provision in § 1640(a), (e), inasmuch as her right to "commence suit [i.e., after obtaining notice of the lender's violation] to enforce her attempted [r]escission" expired "on or about September 29, 2009, approximately two months before [the

-7-

instant] suit was commenced." Aplt. App. at 65. Ms. Rosenfield subsequently filed a timely notice of appeal.

## II. Standard of Review

We review a district court's dismissal of a complaint under Rule 12(b)(6) de novo, and apply "the same legal standard as the district court." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). We must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *see Morris v. City of Colorado Springs*, 666 F.3d 654, 660 (10th Cir. 2012). In order to survive a motion to dismiss brought under Rule 12(b)(6), the plaintiff must allege sufficient facts to make her claim to relief plausible on its face. *See Jordan-Arapahoe*, 633 F.3d at 1025; *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe*, 633 F.3d at 1025 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009))

-8-

(internal quotation marks omitted). In addition to the allegations contained in the complaint, the court may consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity. *See Smith*, 561 F.3d at 1098.

### III. Discussion

Ms. Rosenfield presents three separate issues for review in her opening brief. First, she argues that the district court erred in holding that she failed to exercise her right of rescission under TILA within the three-year time period set forth in 15 U.S.C. § 1635(f). Second, and largely related to her first claim, she argues that, by raising a TILA rescission defense in her Colorado foreclosure action, she properly exercised her rescission rights under TILA. Third, assuming that she did properly exercise her rescission rights under § 1635(f), Ms. Rosenfield argues that the district court erred in holding that her TILA claims to enforce rescission are subject to the one-year statutory limitations period under § 1640.

We conclude that the district court properly dismissed Ms. Rosenfield's complaint on the ground that she failed to exercise her rescission rights within the three-year repose period under § 1635(f) and, therefore, her rescission rights expired. Relatedly, we hold that her rescission argument based upon her defensive actions in Colorado's Rule 120 proceeding is unavailing, and the district court did not abuse its discretion in declining to allow Ms. Rosenfield to

amend her complaint to incorporate facts related to it. In light of these two rulings, which establish that Ms. Rosenfield's TILA rescission rights were extinguished, we do not reach Ms. Rosenfield's third argument relating to whether the limitations period of § 1640 barred her TILA claims.[4]

## A. TILA

We briefly discuss the structure of TILA in order to provide context to the questions presented in this dispute. TILA was enacted in 1968 to improve lending practices. *See* Truth in Lending Act, Pub. L. No. 90-321, 82 Stat. 146,

---

[4] We acknowledge receipt of two amicus curiae briefs, one filed by the Consumer Financial Protection Bureau ("CFPB"), a federal regulatory agency; and the other by the American Bankers Association, the Consumer Bankers Association, and the Consumer Mortgage Coalition [collectively, the "Bankers"]. Although these briefs largely cover the same terrain as the parties' arguments, they are helpful. We do exercise appropriate care, however, to keep our primary focus on the parties' arguments. *See, e.g.*, *Tyler v. City of Manhattan*, 118 F.3d 1400, 1404 (10th Cir. 1997) ("Although this circuit has yet to address the issue, it is clear that this panel has the discretion to reach arguments raised only in an *amicus curiae* brief. It is equally clear, however, that we should exercise that discretion only in exceptional circumstances." (citation omitted)). Nevertheless, to the extent that amici's contentions illuminate the contours of the parties' respective positions or explicate the real-world, industry and regulatory implications of the legal issues before us, we discuss those contentions below. *See, e.g.*, *Townsend Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1236 n.2 (10th Cir. 2002) ("The EEOC in its amicus brief urges us to hold that such an instruction is required. The commission provides extensive citation and analysis of relevant case law."); *Worthen Bank & Trust Co. v. Nat'l BankAmericard Inc.*, 485 F.2d 119, 120 n.2 (8th Cir. 1973) ("Since the importance of the bank credit card industry to the general public was undisputed, the Court, on its own motion invited the United States to submit a brief as amicus curiae."); *cf.* Bruce J. Ennis, *Effective Amicus Briefs*, 33 Cath. U. L. Rev. 603, 603 (1984) ("A good idea is a good idea, whether it is contained in an amicus brief or in the brief of a party.").

146 (1968) (codified at 15 U.S.C. §§ 1601–1665 (Supp. IV 1964)); *see Chase Bank USA, NA v. McCoy*, 131 S. Ct. 871, 874–75 (2011) ("Congress passed TILA to promote consumers' 'informed use of credit' by requiring 'meaningful disclosure of credit terms[]' . . . ." (quoting 15 U.S.C. § 1601(a))); *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 235 (2004) ("Congress enacted [TILA] . . . in order to promote the 'informed use of credit' by consumers." (quoting 15 U.S.C. § 1601(a))); *Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 265 n.1 (4th Cir. 2008) ("The purpose for enacting TILA . . . was to provide economic stabilization in consumer credit lending by assuring meaningful disclosure of credit terms and thus permitting consumers to make an informed use of credit."); *see also* Elwin Griffith, *Searching for the Truth in Lending: Identifying Some Problems in the Truth in Lending Act and Regulation Z*, 52 Baylor L. Rev. 265, 266–67 (2000) ("When Congress passed [TILA] in 1968, it set new disclosure standards for creditors that also improved conditions for consumers." (footnotes omitted)).

TILA's stated purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To fulfill that purpose, TILA requires lenders to provide borrowers with certain clear and accurate disclosures, and lenders face criminal

penalties and damages for noncompliance.  *See, e.g.*, *id.* §§ 1604, 1611, 1631–32,

1635, 1637–38, 1640; *see also Beach*, 523 U.S. at 412 ("[T]he Act requires

creditors to provide borrowers with clear and accurate disclosures of terms

dealing with things like finance charges, annual percentage rates of interest, and

the borrower's rights.").  These provisions evidence what amounts to the statute's

core, remedial purpose.  *See Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133,

1136 (10th Cir. 1974) ("The Act is designed to prevent 'unscrupulous and

predatory creditor practices[]' [and] is remedial . . . ." (quoting *N. C. Freed Co. v.

Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973))).[5]  In

light of its remedial nature, we liberally construe TILA's language in favor of the

consumer.  *See id.* ("[TILA] must be liberally construed to effectuate the intent of

Congress."); *see also Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065

(11th Cir. 2004) ("As a remedial statute, TILA must be construed liberally in

favor of the consumer."); *Begala v. PNC Bank*, *Ohio, Nat'l Ass'n*, 163 F.3d 948,

950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute

and, therefore, should be given a broad, liberal construction in favor of the

---

[5]      To help meet this underlying remedial purpose, TILA provided the
Board of Governors of the Federal Reserve System (the "Board") the authority to
promulgate "Regulation Z."  *See* 15 U.S.C. § 1604(a); *see also McCoy*, 131 S. Ct.
at 874 ("Pursuant to [the authority granted by TILA], the Board promulgated
Regulation Z . . . .").  Regulation Z provides specific rules giving effect to the
right of rescission under TILA.  *See* 12 C.F.R. § 226.23(a)–(h).  In 2010,
Congress transferred regulatory authority to interpret and promulgate rules
regarding TILA to the CFPB.  *See* 12 U.S.C. § 5581(b)(1), (d).

consumer."); *Freeman v. B & B Assocs.*, 790 F.2d 145, 149 (D.C. Cir. 1986) (noting that TILA's provisions must be given an appropriate level of liberal construction in light of its broad, remedial purposes); *cf. Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (construing a different statute liberally "in favor of the consumer" because it, like TILA, is "remedial" in nature).

One of the "remedial" rights that TILA accords to consumers is the right to obtain rescission of a loan in equity. *See* 15 U.S.C. § 1635(a). Specifically, TILA authorizes a borrower whose loan is secured with her "principal dwelling" to rescind the loan transaction entirely "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing [certain] material disclosures . . . , whichever is later." *Id.* If the required TILA disclosures are never made, then the borrower's right of rescission under § 1635(f) "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.* § 1635(f); *see also Beach*, 523 U.S. at 411, 415 ("[W]hen a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately."); *Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 324–25 (4th Cir. 1998) ("If the required notice or material disclosures are not delivered, then § 1635(f) provides a [three-year] time limit for the exercise of the

right."). A borrower who rescinds "is not liable for any finance or other charge, and any security interest given by [her], including any such interest arising by operation of law, becomes void" upon a rescission. 15 U.S.C. § 1635(b); *see also Saxon Mortg.*, 537 F.3d at 324–25 (providing an extensive discussion of the statutory rescission procedures under TILA).

## B.      Invoking § 1635(f)'s Right of Rescission

In this appeal, we are presented with two related questions: specifically, whether Ms. Rosenfield properly exercised her statutory right to rescind within § 1635(f)'s three-year statutory time bar either by (1) sending written notice to HSBC[6] of her intent to rescind, and thereafter receiving no response, or (2) asserting a defense of rescission during a Colorado Rule 120 Proceeding. Ms. Rosenfield contends that she properly exercised her statutory right to rescind under TILA in the two foregoing ways.

Before reaching the substance of Ms. Rosenfield's argument, it is helpful to examine *Beach v. Ocwen Federal Bank*, the Supreme Court's most recent decision on a consumer's right to rescission under TILA. In *Beach*, the petitioners were

---

[6]      Although Ownit was the original party to the financing, Ms. Rosenfield alleges that the loan was subsequently sold or assigned to HSBC. Ms. Rosenfield's complaint further avers that she sent notice of rescission to the "lender"; however, the complaint does not specify the identity of the "lender" to which she refers. For purposes of this appeal, it does not appear there is any dispute over whether Ms. Rosenfield sent the notice of rescission to the correct entity, so we view HSBC as the alleged "lender" in evaluating its motion to dismiss.

financial consumers who secured an $85,000 loan on their home. 523 U.S. at 413. They refinanced their home shortly thereafter, and, a few years later, stopped making their mortgage payments. *Id.* The bank began foreclosure proceedings. *Id.* The petitioners "acknowledged their default," but raised as an "affirmative defense[]" what amounted to an assertion of the TILA rescission right—*viz.*, they "alleg[ed] that the bank's failure to make disclosures required by the Act gave them rights under []§ 1635 . . . to rescind the mortgage agreement and to reduce the bank's claim by the amount of their actual and statutory damages." *Id.* at 413–14 (footnote omitted). As it happens, however, the *Beach* petitioners asserted the defense more than three years *after* closing on the loan. *Id.* at 415. Nevertheless, they argued that the time restriction in § 1635(f) was, in effect, a statute of limitations, and construed it as limiting their right to "institute an independent proceeding for rescission under § 1635," but not as barring their "right of rescission [asserted] as a 'defense in recoupment' to a collection action." *Id.*

Relying on the plain language of § 1635(f), the Court rejected this argument and held that this provision "govern[s] the life of the underlying right [of rescission]," and is therefore not a statute of limitations, but one of repose:

> The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time

-15-

for seeking a remedy superfluous.

*Id.* at 417 (alteration in original) (quoting 15 U.S.C. § 1635(f)); *see Doss v. Clearwater Title Co.*, 551 F.3d 634, 638 (7th Cir. 2008) (noting that the Court in *Beach* "characterized § 1635(f) as a statute of repose, holding there that borrowers had no right to assert a right to rescind as an affirmative defense in an action to collect brought by a lender more than three years after the consummation of the transaction"). In other words, the Court held that § 1635(f) completely extinguishes the right of rescission under TILA at the end of the specified three-year period. *See Beach*, 523 U.S. at 419 ("Congress's manifest intent . . . [was] that the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run.").

And the Court suggested that there was good reason to adopt this reading of the statutory scheme: a perpetual statutory right of rescission could work to "cloud a bank's title on foreclosure" and "Congress may well have chosen to circumscribe that risk" while—consistent with TILA's remedial goals— "permitting recoupment *damages* regardless of the date a collection action may be brought." *Id.* at 418–19 (emphasis added); *see Saxon Mortg.*, 537 F.3d at 327 ("[A]llowing tolling under § 1635(f) and permitting a party to rescind after a foreclosure sale would create uncertainty in any chain of title of real estate purchased from a foreclosure sale."). With this understanding of *Beach* in mind, we turn to Ms. Rosenfield's arguments.

**1.** *Written Notice*

Ms. Rosenfield first argues—and avers in her complaint—that she sent a written notice of rescission to HSBC on September 9, 2008. She contends that HSBC never responded. Ms. Rosenfield reasons that this is all she was required to do under § 1635(a), (f), and Regulation Z, in order to invoke her right to rescission under TILA. *See* Aplt. Opening Br. at 13 (noting that she "exercised her statutory right to rescind by notifying the creditor of her intent to rescind in writing within the prescribed time limit" (capitalization altered)). HSBC responds that the Supreme Court has definitively foreclosed—through the implicit instruction of *Beach*—any argument that a consumer may exercise her right to rescind in this way. HSBC contends that when a borrower gives written notice before the three-year time bar lapses and the creditor does not respond, the borrower *must then* file her own action for rescission within the three years.[7] The district court, as noted, adopted this position. We agree that the provision of written notice to rescind is not enough for a consumer to invoke her right to rescission under TILA where a creditor fails to respond—i.e., fails to "return to the [borrower] any money or property . . . and . . . take any action necessary or

---

[7]    The parties are in agreement that Ms. Rosenfield's complaint properly alleges that the loan closed on November 3, 2006. The parties also agree that Ms. Rosenfield did not file her own legal action—i.e., this action—to rescind until December 21, 2009, which is outside of the applicable three-year period of § 1635(f). Thus, Ms. Rosenfield may prevail *only* if we conclude that she otherwise properly exercised her right to rescind the loan transaction with HSBC.

appropriate to reflect the termination of any security interest created under the transaction [within twenty days of receiving notice]." 15 U.S.C. § 1635(b).

More specifically, we believe that *Beach* is dispositive of the instant question. There, as discussed, the Supreme Court held that § 1635(f) "govern[s] the life of the underlying right [of rescission under TILA]." 523 U.S. at 417. Because of "Congress's manifest intent . . . that the Act permit[] no federal right to rescind, defensively *or otherwise*, after the 3-year period of § 1635(f) has run," *id.* at 419 (emphasis added), we must hold that the mere invocation of the right to rescission via a written letter, without more, is not enough to preserve a court's ability to effectuate (or recognize) a rescission claim after the three-year period has run.

Ms. Rosenfield's position is not consistent with the effect of a strict repose period—which *Beach* held that § 1635(f) establishes *in this context*—one that operates to *completely* extinguish the right being claimed *after it lapses*. *Cf., e.g.*, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) ("The 3-year limit is a period of repose inconsistent with tolling."), *superseded by statute as stated in Murphy v. FDIC*, 208 F.3d 959, 965 n.4 (11th Cir. 2000); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011) (noting that a statute of repose "serves as an unyielding and absolute barrier to a cause of action, regardless of whether that cause has accrued" (quoting *Klein v. DePuy, Inc.*, 506 F.3d 553, 557 (7th Cir. 2007)) (internal quotation marks omitted));

-18-

*McDonald v. Sun Oil Co.*, 548 F.3d 774, 779–80 (9th Cir. 2008) ("A statute of repose . . . can bar a suit even before the cause of action could have accrued, or, for that matter, retroactively after the cause of action has accrued. . . . It is not concerned with the plaintiff's diligence; it is concerned with the defendant's peace." (quoting *Underwood Cotton Co. v. Hyundai*, 288 F.3d 405, 408–09 (9th Cir. 2002)) (internal quotation marks omitted)); *cf. also Jones v. Thomas*, 491 U.S. 376, 392 (1989) (Scalia, J., dissenting) ("[T]he Double Jeopardy Clause is a statute of repose for sentences as well as for proceedings. Done is done."). "A statute of repose is strong medicine, precluding as it does even meritorious suits because of delay for which the plaintiff is not responsible." *McCann*, 663 F.3d at 930; *see Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1095 (9th Cir. 2011) (suggesting that a statute of repose is "a firm bar that is not subject to tolling"), *vacated on other grounds by Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1421 (2012); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1056, at 240 (3d ed. 2002) ("[A] repose period is fixed and its expiration will not be delayed by estoppel or tolling.").

Importantly, consistent with *Beach*, TILA establishes a *right of action* that is *generally* redressable only when a party seeks recognition of it by invoking the power of the courts.[8] Indeed, we believe that it is the filing of an action in a court

_____

[8] We need not (and do not) decide here whether a TILA rescission may
(continued...)

-19-

(or perhaps a defensive assertion of the rescission right in a court) that is required to invoke the right limited by the TILA statute of repose; the concept of repose itself (especially in the context here) fundamentally *limits* the ability to file an action. *See, e.g.*, *Joseph v. Wiles*, 223 F.3d 1155, 1168 (10th Cir. 2000) ("Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished."); *Saxon Mortg.*, 537 F.3d at 327 ("By its terms, § 1635(f) mirrors a typical statute of repose in that it 'precludes *a right of action* after a specified period of time rather than' providing that a cause of action must be brought within a certain period of time after the cause of action accrued." (quoting *Beach v. Great W. Bank*, 692 So. 2d 146, 152 (Fla. 1997))); *see also Margolies v. Deason*, 464 F.3d 547, 551 (5th Cir. 2006) (noting that, because the "statute at issue" was one of "repose," "the right to relief itself is extinguished when the relevant time period expires," and thus, under the facts of the case, the "*causes of action* were extinguished" (emphasis added)); *P. Stolz Family P'ship LP v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) ("In general, a statute of repose *acts to define temporally the right to initiate suit* against a defendant after a legislatively determined time

---

[8](...continued)
be practically effectuated where the lender, on receipt of a consumer's notice to rescind, acts on the consumer's wishes, and, for instance, purports to cancel the underlying transaction at issue. We do not foreclose an argument that courts may recognize this conduct as completing the circle contemplated by TILA, and could conceivably hold the lender responsible in equity.

period." (emphasis added)).

Moreover, an examination of the structure of the right conferred in this case—that is, rescission—supports our conclusion. Rescission in its most basic form is an equitable remedy designed to return the parties to the status quo prevailing before the existence of an underlying contract. *See Saxon Mortg.*, 537 F.3d at 326 ("The effect of a rescission of an agreement is to put the parties back in the same position they were in prior to the making of the contract."); *see also Nichols v. Greenpoint Mortg. Funding, Inc.*, No. SA CV 08-750 DOC (MLGx), 2008 WL 3891126, at *5 (C.D. Cal. Aug. 19, 2008) (noting that rescission "is a means to return the parties to the *status quo ante*"). It confers on a party the right to void a contract in equity—i.e., to make it such that "the agreement [had] never been executed." *Saxon Mortg.*, 537 F.3d at 326 (quoting *Invengineering, Inc. v. Foregger Co.*, 293 F.2d 201, 204 (3d Cir. 1961)) (internal quotation marks omitted). The failure to adhere to TILA's disclosure provisions—for which the statutory remedy of rescission is provided—is analogous, in substance, to some of the traditional grounds recognized for contractual rescission. For instance, rescission is generally available in circumstances where the aggrieved party is improperly induced into assenting to terms of a contract, *see, e.g.*, Restatement (Second) of Contracts § 164(1) (noting that a "contract is voidable by the recipient" where his "manifestation of assent is induced by either a fraudulent or a material misrepresentation"), or where a fundamental assumption upon which he

relied in assenting was incorrect, *see, e.g.*, *id.* § 265 (providing that the "non-occurrence of . . . a basic assumption on which the contract was made . . . discharge[s]" a party's remaining duties); *id.* § 152 ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party . . . ."); *id.* § 153(a) (noting that "a mistake of one party at the time a contract was made as to a basic assumption" may render the contract "voidable . . . if he does not bear the risk of the mistake" and, *inter alia*, "the effect . . . is such that enforcement of the contract would be unconscionable").

TILA seeks "to assure a meaningful disclosure of credit terms" and to "protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). It provides a federally recognized basis for a party to rescind her loan agreement where she has not been provided the required statutory disclosures. Thus, we ascertain no basis for concluding that the TILA rescission remedy differs in any material respect from the general form of rescission available in the aforementioned, analogous contexts. *See Saxon Mortg.*, 537 F.3d at 326–27 (discussing the general "effect of a [common law] rescission" in assessing a TILA claim). And to effectuate a rescission in the general remedial sense means that "each party [must] return to the other what he has received from the other by way of contractual performance." Andrew Kull,

*Rescission and Restitution*, 61 Bus. Law. 569, 577 (2006); *see Watkins v. SunTrust Mortg., Inc.*, 663 F.3d 232, 238 (4th Cir. 2011) (noting that the effect of a TILA rescission, "*as with any rescission*, . . . is to return the parties to the same position they were in before the rescinded transaction was consummated" (emphasis added)); *see also In re SeaQuest Diving, LP*, 579 F.3d 411, 419 (5th Cir. 2009) ("The purpose of rescission is to place the parties in the position that they would have occupied if no such contract had ever been made.").

The primary justification of rescission, however, is "remedial economy," not, for instance, the compensatory goal of a damages award. *See* Kull, *supra*, at 577. Consequently, it is not an appropriate remedy in circumstances where its application would lead to prohibitively difficult (or impossible) enforcement. *See id.* ("[Rescission] is the intuitive choice of remedy in those cases, relatively few in number, in which . . . it is easier, or at least no more costly, to unwind the contractual exchange than to enforce it."); *see also Saxon Mortg.*, 537 F.3d at 326 ("Rescission . . . would have returned the parties to their pre-contractual state."); *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007) ("The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'" (quoting *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003))).

With this understanding of the nature of the rescission remedy, we conclude that Ms. Rosenfield's reading of § 1635(f) is not congruent with it. It may be,

strictly speaking, that "by notifying the creditor, in accordance with [Regulation Z]," 15 U.S.C. § 1635(a), a borrower may properly alert the creditor of her *intent to rescind* the underlying transaction. However, as Ms. Rosenfield would have it, transmission of such notice would be *all that is required* to exercise the right of rescission. The problem with this argument is that, in a significant number of instances, the remedial economy of the remedy would be jeopardized. *See* Kull, *supra*, at 577. Specifically, it is self-evident that when a borrower who has provided notice to a creditor decides later—at some unknown, and perhaps distant, point in the future—to effectuate the rescission right through judicial process, the underlying circumstances in no small number of cases are likely to have changed significantly. Just to provide one example: new actors may have come onto the field post-transaction and obtained some interest in the loan or the underlying property. *Cf. Beach*, 523 U.S. at 418–19 (recognizing that TILA's statute of repose acts to limit the clouding of a property's title). And, as a consequence of this reality, enforcement would likely be costly and difficult. In short, such an outcome is not consistent with the general goal and application of a rescission remedy.[9]

---

[9] We recognize that even the exercise of rescission within the three-year period under § 1635 may result in the inefficient unwinding of some transactions. However, this limited statutory hollowing of the remedial economy of rescission is a far cry from the harmful effect that would likely arise from Ms. Rosenfield's reading of the statute, where the steps to carry out the remedy could

(continued...)

Ms. Rosenfield responds that the plain text of TILA and Regulation Z provides all that is necessary for her in this case. More specifically, as she points out, TILA provides that the borrower must "notify[] the creditor, in accordance with regulations of the Bureau, of [her] intention to [rescind]." 15 U.S.C. § 1635(a). Concomitantly, Regulation Z states, in pertinent part, that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). According to Ms. Rosenfield, neither TILA nor Regulation Z appears to explicitly require the consumer to take any other action to exercise the right to rescind. We do not, however, read these provisions as establishing that notice is a *sufficient* condition for the exercise of the TILA rescission right. Read plainly, *see Beach*, 523 U.S. at 416 ("[I]n this instance, the answer is apparent from the plain language of § 1635(f)."); *see also United States v. Lamirand*, 669 F.3d 1091, 1094 (10th Cir. 2012) ("[W]e begin with the text of [the statute]."); *Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 794 (10th Cir. 2010) (suggesting that deference must be given to an agency's interpretation of a regulation, *unless* the plain language counsels otherwise), these provisions suggest only that the giving

---

[9](...continued)
occur much later in the future after a borrower has purportedly provided notice of an intent to rescind. Furthermore, Congress surely contemplated the possibility that some transactions might be unwound at greater costs when it provided a generous three-year period of repose.

of notice is a *necessary* predicate act to the ultimate exercise of the right, *see* 12 C.F.R. § 226.23(a)(2) (suggesting that "the consumer shall notify the creditor of the rescission" *in order to* "exercise the right to rescind")—not that it is sufficient for such exercise.

Moreover, "[w]e have never before read statutory [or regulatory] language in . . . a vacuum." *United States v. Hinckley*, 550 F.3d 926, 933–34 (10th Cir. 2008), *abrogated on other grounds by Reynolds v. United States*, 132 S. Ct. 975, 984 (2012). "[I]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122 (1849)) (internal quotation marks omitted).

In that vein, we cannot ignore the mandatory language of § 1635(f), which pertinently provides that the "obligor's right of rescission *shall expire* three years after the date of consummation of the transaction or upon . . . sale of the property." 15 U.S.C. § 1635(f) (emphasis added). When the mandatory directive of that language is understood in the light of the fundamental concerns of the statute, as explained by the Court in *Beach*, it is clear that we cannot endorse Ms. Rosenfield's reading of the statutory scheme. Contrary to the statute's concerns, as expressed in its language, Ms. Rosenfield's reading would allow the right of rescission to operate broadly to "cloud a bank's title on foreclosure," 523 U.S. at

-26-

418–19, and, relatedly, would permit the time period for solidifying the legal

relationship between lenders and borrowers to be effectively enlarged, thus

"upset[ting] the economic best interests of the public as a whole,"[10] *Saxon Mortg.*,

---

[10]    In its amicus curiae brief, the CFPB argues that rescission under TILA is a "non-judicial rescission process" that may be "accomplished privately by notice" in light of the plain dictate embodied in 12 C.F.R. § 226.23(a)(2) and 15 U.S.C. § 1635. *See* CFPB Br. at 14–15. It cites various cases—mostly concerning matters of state law—in seeking to establish as much. *See* CFPB Br. at 16. This argument is aimed at bolstering its position that rescission under TILA, while perhaps limited by a statute of repose, need not necessarily be exercised by actually filing a lawsuit. *See id.* at 18–21. According to the CFPB, its view of what is sufficient to exercise a rescission under TILA is consistent with *other* types of repose statutes under which rescission may be exercised by conduct other than litigation.

These arguments have some superficial appeal, but we are constrained by the *Beach* Court's defining of the parameters of rescission under TILA. Specifically, while TILA rescission accomplishes, in the same practical, remedial sense, what is accomplished by common-law rescission, the *Beach* Court has framed the *federal* rescission right more narrowly to be congruent with its vision of repose under TILA. In that regard, as we read *Beach*, the Court conceived of repose under TILA as working to prevent the rescission right from acting to unduly "cloud a bank's title on foreclosure." 523 U.S. at 418–19. It naturally follows that part and parcel of the Court's vision of repose was the manner in which a rescission claim must be asserted during the repose period—that is, by invoking the power of the courts through litigation. *See Beach*, 523 U.S. at 415–16 ("The 'ultimate question' is whether Congress intended that 'the right *shall be enforceable* in any event after the prescribed time[.]'" (emphasis added) (quoting *Midstate Horticultural Co. v. Penn. R.R.*, 320 U.S. 356, 360 (1943)). Were this not so, the rescission right could conflict with the Court's conception of repose under TILA, in that it would effectively create commercial uncertainty and enlarge the period before the relationship between borrowers and lenders is solidified. *See also infra* note 11. Thus, the fact that rescission may be exercised under *other state-law* statutes of repose within their specified time periods without use of the courts is irrelevant to the question of what is required to exercise the rescission right within the repose period of TILA.

537 F.3d at 327.

As the *Beach* Court suggested, a rescission has the capacity to negatively affect the certainty of title in a foreclosure sale—and potentially thereafter. *See* 523 U.S. at 418–19 ("Since a statutory right of rescission could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk . . . ."). This is why it held that "the Act permits no federal right to rescind, defensively *or otherwise*, after the 3-year period of § 1635(f) has run." *Id.* at 419 (emphasis added). Allowing uncertainty of title to drag on past the already-generous three-year repose period would run counter to the commercial-certainty concerns of Congress (recognized in *Beach*) that led Congress to establish the fixed and limited repose period of § 1635(f) in the first place. Put differently, accepting a consumer's *unilateral* notice of an intent to rescind as a legally effective exercise of rescission, where the creditor has not in any sense *actually* acted on the consumer's wishes, would indirectly enlarge the congressionally established three-year time period under TILA, and it could work to cloud the title of the property for an indefinite period of time.[11] Ms. Rosenfield's

---

[11] The foregoing is reinforced by examining another section of the statute. *See Pharmanex v. Shalala*, 221 F.3d 1151, 1154 (10th Cir. 2000) ("We must interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)) (internal quotation marks omitted)). By its plain terms, § 1635(b) contemplates a *reaction* by the creditor in order to effectively "close the deal"—that is, the creditor "shall return to the

(continued...)

-28-

arguments to the contrary run counter to the Supreme Court's determination in

*Beach*, and would, as the district court correctly held, "introduce[] a lacuna

between the expiration of the right to rescind and the time in which the lender

might learn of a purportedly timely [r]escission that it does not recall receiving."

Aplt. App. at 63.

While TILA must be construed liberally in favor of the consumer, *see*

*Littlefield,* 498 F.2d at 1136, ultimately, we cannot accept Ms. Rosenfield's view

of the statute. And we are not alone in our holding. *See, e.g.*, *McOmie-Gray v.*

*Bank of Am.*, 667 F.3d 1325, 1328 (9th Cir. 2012) ("[U]nder the case law of this

---

[11](...continued)
obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction . . . [w]ithin 20 days after receipt of [the] notice." 15 U.S.C. § 1635(b). Absent this "return," there has been no mutual recognition of cancellation of a loan in the literal sense. *Cf. Shelton*, 486 F.3d at 821 (suggesting that "unilateral notification of cancellation [of a loan] does not automatically void the loan contract," because, "[o]therwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any" (alteration in original) (quoting *Yamamoto*, 329 F.3d at 1172) (internal quotation marks omitted)). Yet, under Ms. Rosenfield's view, a consumer who has purportedly provided notice to a creditor within the three-year repose period may sit on her proverbial rights, while circumstances may change—including a transfer of the subject property to another, innocent bona-fide purchaser—and years may pass, without eliciting any action from the creditor, and then at some indeterminate time seek to effectuate her rescission remedy in court. We are hard-pressed to conclude that this result can be harmonized with the Supreme Court's explicit concern that an action invoking a "statutory right of rescission" must be limited temporally, lest it "cloud a bank's title on foreclosure." *Beach*, 523 U.S. at 418.

court and the Supreme Court, rescission suits must be brought within three years from the consumation of the loan, regardless whether notice of rescission is delivered within that three-year period."); *Williams v. Wells Fargo Home Mortg., Inc,* 410 F. App'x 495, 498–99 (3d Cir. 2011) ("It may be that an obligor may invoke the right to rescission by mere notice.  Mere invocation without more, however, will not preserve the right beyond the three-year period."); *Sobieniak v. BAC Home Loans Servicing, LP*, --- F. Supp. 2d ----, 2011 WL 6122318, at *4 (D. Minn. Dec. 8, 2011) (noting that "[t]he majority of courts" addressing the question of "whether a claim for rescission survives the three-year period if an obligor sends a rescission request to a bank within three years, but fails to file suit until the time allowed by the statute of repose expires," have held "that such a suit is barred by § 1635(f)"); *Barry v. Countrywide Home Loans, FSB*, No. 10-cv-1525-JLK, 2011 WL 441508, at *2 (D. Colo. Feb. 8, 2011) (noting that "§ 1635(f) is a statute of repose which, *without exception*, extinguishes any right to rescind three years after a transaction has been consummated" (emphasis added)); *Sam v. Am. Home Mortg. Servicing*, No. S-09-2177 LKK/KJM, 2010 WL 761228, at *2 (E.D. Cal. Mar. 3, 2010) ("[P]laintiff must file a complaint seeking rescission before the statute of repose expires."); *cf. Shelton*, 486 F.3d at 820 ("[U]nilateral notification of cancellation does not automatically void the loan contract."); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("[Section] 1635(f) is a statute of repose, depriving the courts of subject

matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period."). *But see, e.g.*, *Gilbert v. Residential Funding LLC*, --- F.3d ----, 2012 WL 1548580, at *4–5 (4th Cir. May 3, 2012).[12]

Accordingly, we agree with the district court's decision that notice, by itself, is not sufficient to exercise (or preserve) a consumer's right of rescission under TILA. The commencement of a lawsuit within the three-year TILA repose period was required. Because it is undisputed that Ms. Rosenfield filed the instant lawsuit *after* the three-year repose period expired, the district court correctly dismissed her complaint. Ms. Rosenfield was not entitled to the effectuation of a rescission remedy.

## 2. *Assertion of a Defense in the Rule 120 Proceeding*

Ms. Rosenfield also argues that, even if the rescission right is extinguished

---

[12] We acknowledge the Fourth Circuit's recent opinion in *Gilbert* "disagree[ing] . . . that a borrower must file a lawsuit within the three-year time period to exercise her right to rescind, as opposed simply to notifying the creditor." --- F.3d ----, 2012 WL 1548580, at *4. In *Gilbert*, the Fourth Circuit relied primarily on the text of 15 U.S.C. § 1635(f) and 12 C.F.R. § 1026.23(a)(2) in finding that a borrower had "exercised [the] right to rescind" under TILA by transmitting a notice of rescission within the applicable statutory time period. *Id.* at *5. In the Fourth Circuit's view, the right to rescission can be "exercised" under TILA without the rescission being *effectuated* by a court. *See id.* We disagree that the filing of a suit *to rescind* is not required in order to exercise the right. We simply cannot square the Fourth Circuit's view with the Supreme Court's strong pronouncement in *Beach* that the TILA rescission right is extinguished if it is not exercised within the three-year statutory period, *see* 523 U.S. at 416–17, *and* the Court's vision of repose and its salutary purposes under TILA.

if one does not invoke the power of the courts to effectuate it within the three-year repose period, she sought to enforce and thereby properly preserved the right when she asserted a defense of rescission in the Colorado Rule 120 proceeding before the three-year period expired. As she sees it, "if [she] had prevailed in that action, she would have obtained a judicial determination of the effectiveness of the rescission, and HSBC would have been unable to proceed with the foreclosure." Aplt. Opening Br. at 24. The district court rejected this argument, finding that asserting a defense in a Colorado Rule 120 foreclosure proceeding is "[not] the equivalent of commencing suit seeking a declaration of rights under TILA." Aplt. App. at 66.

As a threshold matter, Ms. Rosenfield did not allege in her complaint that she had raised a defense of rescission in the Rule 120 proceeding. Nor did she reference in her complaint any documents used at this proceeding that would evidence her assertion of the defense. This presents a significant barrier to consideration of her Rule 120 allegations in the context of a motion to dismiss. *See, e.g.*, *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004) (noting that "[w]here a party has moved to dismiss under Rule 12(b)(6) for failure to state a claim . . . and matters outside of the pleadings have been presented to the court for consideration, the court must either exclude the material or treat the motion as one for summary judgment" (quoting *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)) (internal quotation marks omitted)); *cf. Smith*, 561 F.3d at 1098

("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference . . . ." (citation omitted)); *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008) (noting that, on a motion to dismiss, "[t]he court . . . is 'limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint'" (quoting *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995))).

Ms. Rosenfield has requested that she be given an opportunity to amend if we find that her allegations were not properly presented, but nonetheless legally sufficient. And she made a similar request before the district court. However, despite the discretionary policy on freely permitting leave to amend, *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."), a dismissal with prejudice is appropriate "where [the] complaint fails to state a claim . . . and granting leave to amend would be futile," *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *see Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (quoting *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006)) (internal quotation marks omitted)).

While at first blush it might appear that the district court directly addressed Ms. Rosenfield's Rule 120 argument as if it had been properly presented, after

-33-

carefully reviewing the court's order, we conclude that the district court's examination of the merits of her Rule 120 argument may be reasonably viewed as a predicate to its determination concerning the futility *vel non* of her motion to amend. More specifically, having assessed the merits of her Rule 120 argument, the district court *refused* to permit an amendment to the complaint "in order to rescue . . . [Ms. Rosenfield] from the untimeliness of the claims *as actually pled*." Aplt. App. at 66–67 (emphasis added).

In other words, the court's rejection of Ms. Rosenfield's Rule 120 argument may be reasonably characterized as a determination that she should not be permitted to amend her complaint in order to plead an allegation that her assertion of a rescission defense in the Rule 120 proceeding constituted an exercise of her TILA rescission rights. This is because such an allegation would have been of no legal moment in curing the deficiency of her complaint, and thus an amendment would have been futile. *See id.* at 67 n.6 ("Because the Court finds that the Plaintiff's claims are subject to dismissal as untimely, not as a result of some factual pleading deficiency, the Court denies the request for leave to replead."). We agree that amendment would be futile, and we reject Ms. Rosenfield's request to amend.

We have no basis to conclude that Rule 120 proceedings contemplate the recognition of a TILA rescission defense. Instead, "the Rule 120 hearing is designed to address, in summary fashion, issues related *specifically to the*

-34-

*existence of a default*." *Plymouth Capital Co. v. Dist. Court of Elbert Cnty.*, 955 P.2d 1014, 1016 (Colo. 1998) (en banc) (emphasis added); *see Dean v. JP Morgan Chase Bank, NA*, No. 10-cv-00539-PAB-MJW, 2011 WL 782727, at *2 (D. Colo. Feb. 28, 2011) (noting that Rule 120 proceedings are "limited [in] scope" and "non-adversarial"); *Lanier v. Sylvester*, No. 08-cv-00386-CMA-MEH, 2008 WL 4830797, at *3 (D. Colo. Nov. 4, 2008) ("Rule 120 limits the scope of the hearing to issues regarding whether a default has occurred, making it permissible for the judge to refuse to hear matters outside of that scope."); 2 Colo. Prac. Series § 68.16 (5th ed. 2011) (noting that the Rule 120 court may pertinently consider, *inter alia*, "the existence of a default, [and] the existence of other facts and circumstances authorizing, under the terms of the deed of trust described in the Motion [for a foreclosure], the exercise of the power of sale contained therein" (footnotes omitted)).

The Rule 120 court is empowered, "[i]n making this determination," to consider "all relevant evidence," *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 512 (Colo. App. 2006) (quoting *Plymouth Capital*, 955 P.2d at 1017) (internal quotation marks omitted), but a "Rule 120 hearing is not the proper forum for addressing the various and complex issues that can arise in some foreclosures," inasmuch as this "would defeat the purpose of the streamlined public trustee foreclosure and afford little advantage over a judicial foreclosure," *Plymouth Capital*, 955 P.2d at 1017. It is a "non-judicial foreclosure" hearing,

the findings of which are not entitled to preclusive effect. *Id.* at 1016; *see also* Colo. R. Civ. P. 120(d) ("The granting of any such motion shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction, and the denial of any such motion shall be without prejudice to any right or remedy of the moving party."). These proceedings, thus, do not appear to contemplate any adjudication of a TILA rescission claim. For that reason, we agree with the district court that Ms. Rosenfield would have gained no legal benefit from a proposed amendment averring her proper assertion of a rescission defense in the Rule 120 proceeding. In other words, amendment would have been futile.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's order dismissing Ms. Rosenfield's complaint under Rule 12(b)(6).