NATIONAL CREDIT UNION
ADMINISTRATION BOARD,
Plaintiff,

v.

CREDIT SUISSE SECURITIES (USA)
LLC; Credit Suisse First Boston
Mortgage Securities Corp.; and Indy-
mac MBS, Inc., Defendants.

Case No. 12–2648–JWL.

United States District Court,
D. Kansas.

April 8, 2013.

Order for Reconsideration July 10, 2013.

David C. Frederick, Gregory G. Rapawy, Mark C. Hansen, Wan Joo Kim, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, George A. Zelcs, Korein Tillery, LLC, Chicago, IL, Norman E. Siegel, Rachel E. Schwartz, Stueve Siegel Hanson LLP, Kansas City, MO, Peter H. Rachman, Stephen M. Tillery, Korein Tillery, LLC, St. Louis, MO, for Plaintiff.

Toby Crouse, James D. Oliver, Foulston Siefkin LLP, Overland Park, KS, Lauren A. Moskowitz, Michael T. Reynolds, Richard W. Clary, Richard J. Stark, Cravath, Swaine & Moore LLP, New York, NY, for Defendants.

### *MEMORANDUM AND ORDER*

JOHN W. LUNGSTRUM, District Judge.

This matter is presently before the Court on the motion to dismiss by defendants Credit Suisse Securities (USA) LLC and Credit Suisse First Boston Mortgage Securities Corp. (collectively "Credit Suisse") (Doc. # 23). For the reasons set forth below, the motion is **granted in part and denied in part.** The motion is granted with respect to all of plaintiff's state-law claims, as well as plaintiff's federal claims based on 12 particular certificates, as set forth herein, which are time-barred. The motion is denied with respect to plaintiff's federal claims based on the other eight certificates.

### *I. Background*

Plaintiff National Credit Union Administration Board brings this suit as conserva-

tor and liquidating agent of three credit unions: U.S. Central Federal Credit Union ("U.S. Central"), Western Corporate Federal Credit Union ("WesCorp"), and Southwest Corporate Federal Credit Union ("Southwest"). The suit relates to 20 different residential mortgage-backed securities ("RMBS" or "certificates"), each purchased by one of the credit unions. Plaintiff brings claims under the federal Securities Act of 1933 and California and Kansas statutes, based on alleged untrue statements or omissions of material facts relating to each RMBS. Defendant Credit Suisse Securities (USA) LLC was the underwriter or seller for various certificates, while the other two defendants issued the certificates.

## II. Venue

■ Credit Suisse seeks dismissal of plaintiff's claims brought on behalf of WesCorp or Southwest for lack of venue. Plaintiff's sole allegation relating to venue reads as follows:

> Venue is proper in this District under Section 22 of the Securities Act, 15 U.S.C. § 77v(a), because many of the transactions at issue occurred in Lenexa, Kansas, the headquarters of U.S. Central.

Credit Suisse's sole argument in the brief supporting its motion is that because this allegation says nothing about the other two credit unions, it cannot support venue for the claims brought on behalf of WesCorp and Southwest, which should therefore be dismissed. The Court rejects this argument.

■ The relevant statute allows for venue in any district "wherein the defendant is found or is an inhabitant or transacts business." *See* 15 U.S.C. § 77v(a). The statute does not require that the business transacted by the defendant have been related to the particular claims in order to support venue. *See id.; Adair v. Hunt Int'l Resources Corp.,* 526 F.Supp. 736, 740 (N.D.Ill.1981) (liberal special venue provisions, including Section 77v(a), "do not require that the activities used to establish venue be 'related' or 'connected' to the transaction attacked in the complaint"). Credit Suisse has not argued that any such nexus is required. Thus, the same business activity by Credit Suisse in Kansas supporting venue with respect to claims on behalf of U.S. Central (venue for which Credit Suisse seemingly concedes is proper) would also support venue under this statute for claims against Credit Suisse generally, brought on behalf of any credit union. Accordingly, plaintiff's claims on behalf of the other two credit unions are not subject to dismissal on this basis.

■ In its reply brief, Credit Suisse argues for the first time that its alleged activities in Kansas are not sufficient to meet the standard that it "transacts business" in Kansas. The Supreme Court, in interpreting a similar venue statute from the Clayton Act, has found the "transacting business" requirement to be broader than being "found" or "doing business" in the district. *See United States v. Scophony Corp. of Am.,* 333 U.S. 795, 807, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) (citing *Eastman Kodak Co. of N.Y. v. Southern Photo Materials Co.,* 273 U.S. 359, 373, 47 S.Ct. 400, 71 L.Ed. 684 (1927)). Courts have thus noted that this standard requires less business activity than that required under a "doing business" or "minimum contacts" standard, as "it is intended to have a more flexible and broader meaning than the jurisdictional predicates." *See Zorn v. Anderson,* 263 F.Supp. 745, 747 (S.D.N.Y.1966); *see also Uccellini v. Jones,* 182 F.Supp. 375, 376 (D.D.C.1960) (cited in *Zorn* ).

Credit Suisse asks the Court to apply the standard articulated by one court as follows:

Despite the comparatively latitudinous interpretation which has been given to "transacts business" under [§ 77v(a) ] of the Securities Act of 1933, the courts have insisted that the activities constitute a substantial part of a defendant's ordinary business, that they be continuous, and at least of some duration.

*See United Indus. Corp. v. Nuclear Corp. of Am.*, 237 F.Supp. 971, 978 (D.Del.1964). The Court concludes that this standard is satisfied here. Credit Suisse did not merely have de minimis or random or fortuitous contacts with this district; rather, plaintiff alleges that Credit Suisse and U.S. Central conducted numerous transactions, over several months, involving hundreds of millions of dollars. Accordingly, Credit Suisse is alleged to have engaged in activity that would constitute the transaction of business in this district for purposes of the applicable venue statute. *See, e.g., Birdman v. Electro–Catheter Corp.*, 352 F.Supp. 1271, 1273 (E.D.Pa.1973) (venue proper under United Industries standard where defendant had two percent of its sales in the district); *cf. Hodgdon v. Needham–Skyles Oil Co.*, 556 F.Supp. 75, 78 (D.D.C.1982) (mere recording of a deed, which was not part of the defendants' ordinary business and was not continuous, did not constitute transaction of business under similar standard).[1] Accordingly, the Court denies Credit Suisse's motion to dismiss certain claims for lack of venue.

### III. Timeliness of Claims

#### A. Introduction

Credit Suisse argues that plaintiff's federal and state claims are time-barred.

Section 13 of the Securities Act, 15 U.S.C. § 77m, provides the initial limitations periods for plaintiff's federal claims. That statute provides:

> No action shall be maintained ... unless brought within one year after the discovery of the untrue statement or omission.... In no event shall any such action be brought more than three years after [the relevant sale or public offering of the security].

*Id.* Plaintiff's claim under Kansas law is governed by the following statute of limitations:

> A person may not obtain relief ... unless the action is instituted within the earlier of two years after discovery of the facts constituting the violation or five years after the violation.

K.S.A. § 17–12a509(j)(2). The timeliness of plaintiff's claim under California law is governed by the following provision:

> [N]o action shall be maintained ... unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire.

Cal. Corp.Code § 25506. Thus, these statutes require that these federal and state claim have been filed within one or two years of their discovery and within three or five years of the sale or violation, respectively.

The dates of the sales alleged in the complaint—the dates on which the limitations periods would begin to run absent the discovery rule—range as follows: for claims on behalf of WesCorp (12 certifi-

---

1. Credit Suisse also argues that plaintiff, in alleging venue, has not distinguished between the activities of the two moving defendants. Because it was raised for the first time in the reply brief; however, the Court will not consider this argument. *See, e.g., U.S. Fire Ins.* *Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n. 7 (D.Kan. Aug. 4, 2008) (court will not consider issues raised for first time in reply brief) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir.2003)).

cates), from October 27, 2005, to June 4, 2007; for claims on behalf of U.S. Central (7 certificates), from September 22, 2006, to March 8, 2007; and for Southwest (1 certificate), on June 14, 2006. For the four WesCorp certificates sold before April 2006, only California state law claims are alleged. Plaintiff filed this suit on October 4, 2012. Thus, even assuming compliance with the one- and two-year discovery limitations periods, plaintiff's claims would still be untimely under the three-and five-year limitations periods for every certificate.

Plaintiff asserts various means of avoiding the statutory time bars (other than by arguing timeliness under the discovery rule). First, plaintiff would apply the so-called Extender Statute, 12 U.S.C. § 1787(b)(14), which applies to actions brought by this plaintiff (a governmental entity) as a conservator or liquidating agent. The Extender Statute provides as follows:

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Board as conservator or liquidating agent shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Board as conservator or liquidating agent; or

(ii) the date on which the cause of action accrues.

Thus, plaintiff would apply a three-year Extender Statute limitations period [2] running from the dates of its appointments as conservator and liquidating agent for the three credit unions—March 20, 2009, and October 1, 2010 for WesCorp and U.S. Central; and September 24, 2010, and October 30, 2010, for Southwest.

Second, plaintiff would also apply a tolling agreement, which expressly included statutes of repose, that the parties executed on August 16, 2011, and which expired on September 12, 2012. Third, with respect to the federal claims based on eight particular certificates, P would apply *American Pipe* tolling, which would allow for tolling from the filing of a class action that encompass these claims. The class actions cited by plaintiff were filed in November 2007, September 2008, and January 2009 for the WesCorp claims; in September 2008 for U.S. Central claims; and in January 2009 for the Southwest claims.

*B. Discovery of Claims*

Credit Suisse argues that plaintiff's claims became time-barred, by virtue of the one-year (federal) and two-year (state) discovery limitations periods, before plaintiff could take advantage of the Extender Statute. In the complaint, plaintiff alleges that, as noted in a November 2008 government report, certain conditions made it

---

**2.** Plaintiff concedes that its claims are more akin to tort claims than to contract claims for purposes of the Extender Statute.

difficult for investors of RMBS to know about problems with the underwriting for the original loans; and that WesCorp and U.S. Central could not have discovered their claims within one year before March 20, 2009, and Southwest could not have discovered its claim within one year before September 29, 2010. (Those are the dates plaintiff was appointed conservator, which would trigger the Extender Statute and its separate limitations period.) Plaintiff further alleges: "A reasonably diligent investor would not have known even to begin investigating misrepresentations in the Offering Documents until at least the date the certificates were downgraded to a credit rating below investment grade." The complaint sets out the dates of downgrading by S & P or Moody's for these 20 certificates: for the WesCorp certificates, dates from October 6, 2008, to July 24, 2009; for the U.S. Central certificates, dates from March 27, 2008, to March 13, 2009; and for the Southwest certificate, May 8, 2008.

### 1. PLEADING REQUIREMENT

As a preliminary matter, the parties disagree about the extent to which plaintiff must plead facts to show that its claims are timely. Credit Suisse relies on *Ames v. Uranus, Inc.*, 1993 WL 106896 (D.Kan. Mar. 17, 1993), in which this Court quoted the Tenth Circuit's statement that a plaintiff must "plead and prove facts showing that his or her claim was timely with respect to both the one-year and three-year limitations periods." *See id.* at *4 (quoting *Anixter v. Home–Stake Prod. Co.*, 939 F.2d 1420, 1434 (10th Cir.1991), *vacated on other grounds sub nom. Dennler v. Trippet*, 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992)). Credit Suisse argues that plaintiff has not complied with that requirement because the complaint cites only two government reports and states conclusorily that the credit unions would not have discovered their claims un-

til within a year of the triggering of the Extender Statute.

The Court rejects this argument, essentially for the same reasons cited by Judge Rogers in *National Credit Union Administration Board v. RBS Securities, Inc.*, 900 F.Supp.2d 1222 (D.Kan.2012). In *RBS*, which involved two consolidated cases filed in this district, this same plaintiff brought similar claims on behalf of credit unions involving other RMBS certificates. *See id.* In *RBS*, Judge Rogers addressed this same argument about a plaintiff's pleading requirement based on the Tenth Circuit's statement in *Anixter*. *See id.* at 1243–44. Judge Rogers noted that the pleading requirement urged by the defendants in that case "appears contrary to more recent Supreme Court cases which generally hold against special pleading rules for particular types of cases and that do not require that plaintiffs plead facts to negate affirmative defenses, such as the statute of limitations. *See id.* at 1243 (citing *Jones v. Bock*, 549 U.S. 199, 214–16, 224, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). Judge Rogers further noted that such a requirement has also been criticized by circuit courts in securities law actions. *See id.* at 1243–44 (citing cases). Instead Judge Rogers employed an approach seemingly favored by the Tenth Circuit in one securities fraud case, *see id.* (citing *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1549 (10th Cir.1996)), which approach would "permit the defendant to raise the defense of statute of limitations on a motion to dismiss when the complaint reveals on its face that the suit is time-barred, and on a summary judgment motion when it does not." *See id.* (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1276 (3d ed.2004)).

The Court is persuaded by Judge Rogers's analysis in *RBS*, and it therefore adopts the same approach in this case.

The Court also agrees with Judge Rogers that "[w]hile courts may dismiss an action pursuant to a 12(b)(6) motion on the basis of an affirmative defense such as the statute of limitations, it must be 'clear' from the dates given in the complaint 'that the right sued upon has been extinguished.'" *See id.* (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980)). As Judge Rogers concluded:

Thus, there is a difference in the burden facing plaintiff and defendants in this matter. Plaintiff must merely allege a plausible claim. Defendants must demonstrate that it is clear from the face of the complaint and the matters considered via judicial notice that the plaintiff's claim is barred by the statute of limitation. This is often a matter best reserved for summary judgment.

*See id.* (citations omitted).

### 2. APPLICABLE DISCOVERY STANDARD

■ Credit Suisse also argues that the limitations period should be triggered after "inquiry notice," again based on the Tenth Circuit's opinion in *Anixter*. By that standard, inquiry notice would be present when there are "sufficient storm warnings" to alert of the possibility of misleading statements or omissions. *See Anixter*, 939 F.2d at 1437. The Court rejects that standard, however. In *Sterlin v. Biomune Systems*, 154 F.3d 1191 (10th Cir.1998), the Tenth Circuit concluded that the inquiry notice time from *Anixter* merely triggers an investor's duty to exercise reasonable diligence, and that the statute of limitations runs once the investor, exercising such diligence, should have discovered the facts underlying the violation. *See id.* at 1201; *see also RBS*, 900

F.Supp.2d at 1244–46 (rejecting this same argument for an "inquiry notice" standard).

### 3. APPLICATION OF THE DISCOVERY RULE

■■ Credit Suisse argues that the credit unions should have discovered their claims by March 19, 2007, or at least by March 19, 2008. Credit Suisse cites 2005 and 2006 warnings from plaintiff's agency to credit unions of various risks with RMBS, as well as an after-the-collapse statement by the agency that the risk from the concentration of investment in RMBS should have been recognized earlier than 2007 and 2008. Credit Suisse also cites public information, including from lawsuits—"public storm warnings"—about problems in the industry. Credit Suisse also cites loan performance data to which the credit unions had access—the same type of data cited in the complaint by plaintiff as showing that defendants should have warned of risk—including data showing that delinquency rates for the underlying loans jumped in 2007 and had substantially increased by 2008.

Judge Rogers thoroughly analyzed these potential sources of notice in *RBS*—the credit unions' notice of general problems, poor performance of these investments, spikes in default and delinquency rates, the particular risks disclosed in the offering documents, and the class-action lawsuits filed—and he concluded that none meant as a matter of law that a reasonable investor would have discovered sufficient evidence to bring these claims before March 2007 or even March 2008. *See RBS*, 900 F.Supp.2d at 1246–52.[3] The Court finds that analysis to be sound and

---

**3.** Judge Rogers did dismiss claims based on certain certificates as time-barred, but in those instances there had been a credit downgrade and an FDIC cease-and-desist letter,

with the originator's announcement that it was leaving the business. *See RBS*, 900 F.Supp.2d at 1250–52. No such similar circumstances are argued here.

persuasive and equally applicable to the present case (and thus the Court will not repeat the analysis here).

The Court therefore concludes in this case that it is not clear from the allegations in the complaint and the additional materials submitted by Credit Suisse (of which Credit Suisse asks the Court to take judicial notice) that, as a matter of law, the credit unions reasonably should have discovered the facts giving rise to plaintiff's claims.[4] This issue is better left for a consideration of the evidence at the summary judgment stage or at trial. Accordingly, the Court denies Credit Suisse's motion to dismiss plaintiff's claims as untimely to the extent the motion is based on application of the discovery limitations periods.

### C. Extender Statute

As noted above, plaintiff relies on the Extender Statute to make its claims timely. Plaintiff argues that the Extender Statute provides the sole applicable limitations period, displacing Section 13 (the one-and three-year federal limitations periods) and the state statutes of limitation for all claims not already barred at the time plaintiff became conservator of the credit unions (March 20, 2009, for WesCorp and U.S. Central; September 24, 2010, for Southwest). Plaintiff would then count the Extender Statute's three-year period from the subsequent dates of its appointment as liquidating agent for the credit unions (October 1, 2010, for WesCorp and U.S. Central; October 30, 2010, for Southwest). Again, this suit was filed on October 4, 2012.

### 1. APPLICATION TO FEDERAL, STATUTORY CLAIMS

■ Credit Suisse argues that the Extender Statute does not apply to federal claims, by virtue of its reference to state-law periods of limitation. Credit Suisse further argues that because the Extender Statute refers only to contract and tort claims (providing a different limitations period for each), it does not apply to statutory claims.

The Court concludes that these arguments lack merit. Again, Judge Rogers has thoroughly analyzed these issues, and his reasoning is persuasive. *See RBS*, 900 F.Supp.2d at 1237–40.[5] In particular, the Court notes that although Credit Suisse relies on the text of the Extender Statute for its interpretations, the text actually supports a more expansive reading, as the statute expressly applies to "any action" brought by plaintiff as conservator or liquidating agent (and not merely to state-law contract or tort claims). Under any reasonable reading, the fact that the statute refers to a state-law limitations period as one possible deadline does not necessarily exclude federal claims, which would be governed by the alternative deadline provided in the statute. Similarly, the fact that the statute provides a choice between contract claims and tort claims does not trump the statute's express application to "any action," as a court may readily determine whether a particular claim is more akin to a contract claim or a tort claim for purposes of choosing the applicable limitations period. *See, e.g., FHFA v. Countrywide Fin. Corp.*, 900 F.Supp.2d at 1067–68

---

4. Credit Suisse cites a class-action lawsuit filed against it and other defendants in California state court on November 14, 2007. Although that filing may have triggered the credit unions' duty to investigate, the Court cannot say as a matter of law that they should then have discovered their claims by March 19, 2008. *See RBS*, 900 F.Supp.2d at 1248–

50 (reaching same conclusion regarding a suit filed in November 2007).

5. The defendants in *RBS* have filed an interlocutory appeal of Judge Rogers's opinion, which appeal has been accepted by the Tenth Circuit, with respect to issues relating to the application of the Extender Statute.

(C.D.Cal.2012) (rejecting argument that the Extender Statute does not apply to federal or statutory claims); *FHFA v. USB Americas, Inc.*, 858 F.Supp.2d 306, 317 (S.D.N.Y.2012) (rejecting argument that the Extender Statute does not apply to federal claims); *FDIC v. Zibolis*, 856 F.Supp. 57, 60–61 (D.N.H.1994) (rejecting argument that Extender Statute does not apply to statutory claims). Most significantly, Credit Suisse has been unable to cite any caselaw supporting its interpretations, which this Court rejects.

### 2. DISPLACEMENT OF SECTION 13

■ In relying on the Extender Statute, plaintiff contends that the statute establishes the sole applicable limitations period, thereby displacing both of the limitations periods from Section 13 of the federal Securities Act (one year from discovery, but at most three years from sale) and the California and Kansas statutory limitations periods (two years from discovery, but at most five years from violation). Credit Suisse argues, however, that the Extender Statute displaces only the traditional statutes of limitations based on the discovery rule (one year federal, two years state), but leaves in place the limitations periods that act as traditional statutes of repose (three years federal, five years state). Based on that interpretation, Credit Suisse argues that plaintiff's claims are time-barred under those three-year and five-year statutes of repose.

Credit Suisse relies on the language of the Extender Statute. Specifically, Credit Suisse argues that because the Extender Statute provides the applicable "statute of limitations," it does not on its face affect the statutes of repose contained in Section 13 and the state statutes. Credit Suisse cites to cases that distinguish those two types of statutes generally. Credit Suisse also notes that the Extender Statute refers to the *accrual* date, which is a concept that is part of a statute of limitations, but not a part of a statute of repose (which runs from the violation or the sale, regardless of when the claim accrues). Moreover, in *Anixter* the Tenth Circuit seemingly gave credit to this dual characterization of Section 13 by stating that that statute "sets forth a statute of limitations framed by a statute of repose." *See Anixter*, 939 F.2d at 1434; *accord Joseph v. Wiles*, 223 F.3d 1155, 1166 (10th Cir.2000).

In support of its interpretation, Credit Suisse cites federal district court cases from California and Arizona. In *RTC v. Olson*, 768 F.Supp. 283 (D.Ariz.1991), however, the court did not conduct any meaningful analysis, but merely stated that a similar extender statute dealt only with procedural statutes of limitation and not with substantive statutes of repose, such as the state statute of repose at issue there. *See id.* at 285. In *NCUAB v. RBS Secs., Inc.*, No. 11–5887 (C.D.Cal. Dec. 19, 2011) (tentative ruling), in ruling that the Extender Statute did not displace Section 13's three-year limitations period, the court cited *Olson* and reasoned that the Extender Statute "plainly refers to statutes of limitation" without mentioning statutes of repose. *See id.* slip. op. at 14–16.

The Court is not persuaded by these opinions and does not agree that the plain language of the statutes indicates any intent by Congress that the Extender Statute should not displace Section 13's three-year limitations period. On its face, Section 13 does not provide a statute of limitations and a separate statute of repose; instead, it merely sets two different time periods after which an action may not be prosecuted. The Tenth Circuit has described Section 13's three-year period as a statute of repose; that distinction is not particularly meaningful in this context, however, as the issue does not turn on whether the three-year period was intended to extinguish the right to sue or merely

to bar the remedy. *See, e.g., Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1182–83 (10th Cir.2012) (statute of repose operates to extinguish the claim after lapse).[6] Rather, the issue is whether Congress intended to displace all other applicable limitations periods. The Extender Statute provides that the "applicable statute of limitations" for an action by plaintiff shall be a certain time period. Thus, there is no basis in the statutes' text to indicate an intent that the Extender Statute displace one limitations period in Section 13 but not the other. The Court is not persuaded that the use of the word "accrual" provides evidence that Congress did intend such a dichotomy.

The Court further notes that where Section 13 provides the initial limitations period, Credit Suisse's interpretation would produce a somewhat nonsensical result, in that the Extender would purport to provide a three-year extension that could never last the entire three years, as the three-year period in Section 13 would always expire first. This result further supports the conclusion that Congress did not intend that the Extender Statute leave one limitations period in Section 13 intact while displacing the other.

The Court thus follows the thorough reasoning of Judge Rogers and other courts that have rejected this interpretation of the Extender Statute offered by Credit Suisse. *See RBS,* 900 F.Supp.2d at 1240–43; *FHFA v. Countrywide Fin. Corp.,* 900 F.Supp.2d at 1060–68 (C.D.Cal. 2012); *FHFA v. UBS Americas, Inc.,* 858 F.Supp.2d 306, 313–17 (S.D.N.Y.2012). Those courts also noted that the purpose of the Extender Statute is furthered by applying it to limitations periods akin to statutes of repose, and that statutes of limitations are generally construed in favor

of the government. For these same reasons, the Court concludes that the Extender Statute also displaces Section 13's three-year limitations period and the state statutes' five-year limitations period. Credit Suisse's motion is therefore denied to the extent that it is based on an argument that the three- and five-year periods in Section 13 and the state statutes respectively bar plaintiff's claims despite application of the Extender Statute.

### 3. USE OF DATE OF APPOINTMENT AS LIQUIDATOR

██ One dispute remains concerning the application of the Extender Statute. Plaintiff argues that in applying the statute, it should be able to count its three years from the dates of its appointment as liquidator for these three credit unions, and not from the earlier dates on which it was appointed conservator. Credit Suisse argues that the conservator appointment date would start the three-year clock, and that plaintiff should not be able to reset that clock simply by also becoming the liquidator, as that appointment did not give plaintiff any more right to bring these claims on behalf of the credit unions than it already had as conservator. Neither side has located any caselaw addressing this issue.

The Court agrees with Credit Suisse on this issue. Subparagraph (B) of the Extender Statute provides that the limitations period begins to run on the "later of"

(i) the date of the appointment of the Board as conservator or liquidating agent; or

(ii) the date on which the cause of action accrues.

---

**6.** Whether Section 13 or the Extender Statute extinguishes the right *is* relevant to the application of the tolling agreement, *see infra* Part

III.D; thus, in that context, the Tenth Circuit's reference to Section 13 as containing a statute of repose is meaningful.

*See* 12 U.S.C. § 1787(b)(14)(B). Plaintiff argues that the statute thus offers three possible dates for starting the three-year clock: the date of appointment as conservator, the date of appointment as liquidating agent, and the date of accrual. Plaintiff would then choose the date of appointment as liquidator as the last of those three dates. The statute cannot be reasonably read in that manner, however, as it clearly offers only two possible "dates" (numbered accordingly): the "date" (singular) of appointment as *either* conservator or liquidator, and the date of accrual. That provision of two possible dates is reinforced by the use of "later" instead of "last" (which modifier would be required for three alternatives). Plaintiff satisfied the first possible date when it was appointed as conservator for the credit unions; thus that date must be used in applying the Extender Statute's three-year limitations period.

Plaintiff did not file this suit within three years after its appointment as conservator for WesCorp and U.S. Central on March 20, 2009. Accordingly, plaintiff's claims on behalf of those credit unions are timely only if the Extender Statute's three-year limitations period was tolled in some manner.

### D. Tolling Agreement

 Plaintiff contends that the Extender Statute's limitations period was tolled by a tolling agreement executed by the parties. Credit Suisse argues that the Extender Statute's limitations period may not be tolled by agreement. The Court agrees with Credit Suisse that the Extender Statute is not subject to tolling by agreement.

Credit Suisse relies on *Mid State Horticultural Co. v. Pennsylvania Railroad Co.,* 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943), in which the Supreme Court refused to allow a particular statutory limitations period to be waived by agreement. *See id.*[7] In that case, the Supreme Court determined that Congress had intended to extinguish the right to sue at the end of the limitations period, with no exception allowed, instead of merely barring the remedy after such period. *See id.* Plaintiff would distinguish *Mid State* as involving a particular statute not at issue here. Nevertheless, *Mid State* teaches that if a statutory limitations period was intended to extinguish the right to sue, that period may not be extended or waived by agreement.

The Court concludes that the Extender Statute includes just such a limitations period. The Tenth Circuit has repeatedly referred to Section 13's three-year limitations period as a form of a statute of repose, *see Joseph,* 223 F.3d at 1166 (citing *Sterlin v. Biomune Sys.,* 154 F.3d 1191, 1196 (10th Cir.1998)), which suggests the Tenth Circuit's view that that limitations period was intended to extinguish the right the sue. *See, e.g., Rosenfield,* 681 F.3d at 1182–83 (statute of repose operates to extinguish the claim after lapse).[8] The Extender Statute operates in a similar manner in displacing Section 13.

Moreover, Congress's intent is most clearly articulated by the text of the Ex-

---

**7.** Credit Suisse also relies on the Supreme Court's statement in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), that the three-year "period of repose" for actions under Section 10(b) of the Securities Exchange Act is not subject to tolling, but it was clear in that case that the Court was referring to equitable tolling. *See id.* at 363, 111 S.Ct.

2773. The present case involves the issue of legal tolling by agreement. *See Joseph v. Wiles,* 223 F.3d 1155, 1166–67 (10th Cir. 2000) (concluding that *Lampf* is not applicable to the issue of legal tolling).

**8.** Of course, Congress was free to modify Section 13's absolute bar by enacting the Extender Statute.

tender Statute, which prescribes a particular limitations period "[n]otwithstanding any provision of any contract." *See* 12 U.S.C. § 1787(b)(14)(A). Plaintiff argues that Congress intended by that language to trump a contractual provision setting a particular limitations period, but not a contract entered into after the Extender Statute's limitations period has already begun to run (such as a tolling agreement entered into by plaintiff as conservator).[9] The text of the statute is not so limiting, however. Just as the Extender Statute broadly applies to "any action" (as discussed above with respect to the statute's application to federal and statutory claims), so to must the statute's broad reference to "any provision of any contract" be given effect. Plaintiff's policy arguments are also unavailing. Plaintiff argues that the policy behind the Extender Statute was to give it, as conservator, additional time in which file claims. The policy of any limitations period, however, is to limit the time in which claims may be brought, and the statute's "notwithstanding" provision was clearly intended to limit plaintiff's ability to bring claims.[10] Accordingly, under the analysis of *Mid State*, the Extender Statute evidences an intent to extinguish plaintiff's claim after lapse of the limitations period, and that period therefore may not be waived or extended by a tolling agreement.

 Finally, plaintiff argues that Credit Suisse should be equitably estopped from challenging the application of the tolling agreement that it freely executed. The Tenth Circuit has held that equitable estoppel is not available to avoid Section 13's three-year limitations period. *See*

*Anixter*, 939 F.2d at 1436. In *Anixter*, the Court grounded that holding on the language of Section 13 and concluded that "the more accurate analysis excludes the application of this doctrine when the consequence operates to trump a clear outer limit intended by Congress." *See id.* In the Extender Statute, the "notwithstanding" provision demonstrates Congress's intent to set an outer limit that may not be extended by agreement, and allowing plaintiff to enforce its tolling agreement through equitable estoppel would undermine that intent and render the "notwithstanding" limitation meaningless. Therefore, the Court believes that the Tenth Circuit would similarly find the doctrine of equitable estoppel to be unavailable in the context of the Extender Statute.

Accordingly, the Court concludes that plaintiff may not rely on the parties' tolling agreement to modify the Extender Statute's three-year limitations period in this case.

*E.* American Pipe *Tolling*

 Plaintiff also seeks to use *American Pipe* tolling to avoid or extend the various applicable limitations periods with respect to its federal claims based on eight of the 20 certificates at issue here. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Under *American Pipe* tolling, the commencement of a class action tolls the limitations period for claims later brought by putative class members. *See Joseph v. Wiles,* 223 F.3d 1155, 1166–67 (10th Cir. 2000). *American Pipe* tolling may apply to toll the limitations periods in Section 13, *see id.,* and Credit Suisse does not dispute

---

**9.** In responding to the Court's invitation for additional authority, plaintiff was unable either to identify any specific legislative history concerning the "notwithstanding" language or to identify any caselaw interpreting that language.

**10.** Because the statute is not ambiguous in this respect, there is no reason to construe this phrase in favor of the governmental entity.

that that tolling doctrine could also apply to the Extender Statute's limitations period.

Plaintiff has alleged that for each of eight certificates at issue here, at least one class action involving Credit Suisse included that certificate within its putative class. Credit Suisse argues, however, that a party may only take advantage of *American Pipe* tolling with respect to a claim based on a particular certificate if a named plaintiff in the class action had standing to assert such claim in that case; and that such a plaintiff would have standing only if it purchased that certificate. Credit Suisse further argues that for seven of these eight certificates, the named class action plaintiffs either did not purchase that certificate or have not alleged such a purchase. With respect to the eighth certificate, Credit Suisse concedes that a named plaintiff purchased the certificate, but it argues that because that plaintiff did not purchase the same tranche within that certificate, it does not have standing sufficient to toll the limitations periods (assuming a requirement of tranche-based standing). Thus, Credit Suisse argues that plaintiff cannot claim *American Pipe* tolling for any of these eight certificates.

The courts are split on the issue of whether *American Pipe* tolling requires that the named plaintiffs in the class action have standing to assert the particular claim at issue. Although the Tenth Circuit has not addressed that particular question, the court in *Genesee County Employees' Retirement System v. Thornburg Mortgage Securities Trust 2006–3*, 825 F.Supp.2d 1082 (D.N.M.2011), ably and thoroughly examined that issue specifically under available Tenth Circuit authority. *See id.* at 1161–64. That court noted that the majority of courts have ruled that *American Pipe* tolling applies even where the named plaintiff was later determined to have lacked standing. *See id.* at 1161

(citing cases from the Third and Eleventh Circuits). The court chose to follow the majority rule as the more well-reasoned approach, as the alternative approach would create "a needless multiplicity of actions—precisely the situation that [Rule 23] and the tolling rule of *American Pipe* were designed to avoid." *See id.* at 1162 (quoting *Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir.1994). The court found unpersuasive the criticism that the majority approach could lead to abuse by the use of placeholder class action lawsuits, as such abuse may be avoided by the court's disallowing tolling when "the representative so clearly lacks standing that no reasonable class member would have relied on the filing of the class action." *See id.* (internal quotation omitted). The court further noted that the Tenth Circuit itself had stated, in response to such criticism, that "there is no evidence that *American Pipe* released any flood of class actions." *See id.* (quoting *State Farm Mut. Auto. Ins. Co, v. Boellstorff*, 540 F.3d 1223, 1234 (10th Cir. 2008)). The Court finds this analysis under Tenth Circuit law in *Genesee County* to be sound and persuasive, and it will also follow the majority approach under which the class action plaintiff's standing is not necessarily required for *American Pipe* tolling. *See also, e.g., In re Morgan Stanley Mtge. Pass–Through Certificates Litig.*, 810 F.Supp.2d 650, 668–70 (S.D.N.Y. 2011) (adopting same approach).

█ Applying this majority approach, the Court cannot say that the representative plaintiffs in the class actions cited by plaintiff "so clearly lacked standing that no reasonable class member would have relied on the filing of the action." This conclusion is due to the fact that Credit Suisse's other assumption—that a named plaintiff in the class action must have purchased the particular certificate or tranche in order to have standing to assert a claim

based on that certificate or tranche—is not an established principle of law, as courts are split on that question as well. In fact, the two circuit courts that have addressed the issue in the context of RMBS certificates are themselves split. *Compare Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 768–71 (1st Cir.2011) (standing requires purchase of the certificate by the name plaintiff), *with NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 157–64 (2d Cir.2012) (named plaintiff that did not purchase the particular security may have class standing to assert a claim based on that security if its claims raise the same set of concerns). The Court need not decide whether the Tenth Circuit would more likely follow the First Circuit or the Second Circuit on this question, as the split in authority at least disposes of the argument that no reasonable class member could have relied on the filing of these class actions.

The Court further notes that this result would be the same even if it rejected *Genesee County* and adopted the minority approach concerning whether standing is required for tolling. Credit Suisse relies on *FDIC v. Countrywide Fin. Corp.*, 2012 WL 5900973 (C.D.Cal.2012), in advocating the minority approach, but even that court conceded that "in the case of 'bona fide dispute' over the named plaintiff's standing, the Court would consider allowing tolling for plaintiffs who reasonably but mistakenly relied on that standing." *See id.* at *9 n. 20 (citation omitted). In light of these splits of authority, the Court cannot say as a matter of law, on the present record, that plaintiff may not avail itself of

American Pipe tolling with respect to these eight certificates.[11] Accordingly, Credit Suisse's motion is denied to the extent that it relies on this argument.

*F. Summary of Limitations Issues*

The Court's resolution of the various limitations issues raised by the parties may be summarized as follows. Application of the discovery limitations periods remains for further litigation, and therefore no claims became time-barred as a matter of law prior to the dates when plaintiff triggered the Extender Statute by becoming conservator of the three credit unions. With respect to claims still surviving on those dates, the Extender Statute displaces all other limitations periods, including the three-year and five-year periods imposed by Section 13 and the state statutes. Except in the case of tolling, the Extender Statute would allow three years from the conservator appointment dates— March 20, 2009, for claims on behalf of WesCorp and U.S. Central; September 24, 2010, for claims on behalf of Southwest—in which plaintiff could bring these claims. Suit was filed on October 4, 2012; thus, the claims on behalf of WesCorp and U.S. Central would be untimely without tolling. Plaintiff may not rely on the parties' tolling agreement to toll the Extender Statute's three-year limitations period. The Court has rejected Credit Suisse's argument that plaintiff may not use *American Pipe* tolling as a matter of law; thus, with respect to eight certificates, the Court cannot say at this time that plaintiff's federal claims are time-barred. No tolling is available with respect to the claims based on the other 12 certificates, however. Be-

11. The Court also notes that although Credit Suisse appears to dispute that these eight certificates are named in the class actions cited by plaintiff, only one of the class action complaints has been submitted to the Court, and that complaint (*Luther*) did include the particular certificate at issue here. Credit Suisse has also failed to support its argument that these particular named class action plaintiffs did not purchase these certificates with the submission of any documents from which the Court could take judicial notice of those facts.

cause those claims (all on behalf of Wes-Corp and U.S. Central) were not filed within three years of the date on which plaintiff became conservator, they are untimely and are subject to dismissal. Moreover, plaintiff has not asserted *American Pipe* tolling with respect to its state-law claims; therefore, all such claims are time-barred.[12]

Accordingly, Credit Suisse's motion to dismiss is granted with respect to all of plaintiff's state-law claims and with respect to plaintiff's federal claims based on the following certificates:

| CUSIP | Issuing Entity | Purchaser |
|---|---|---|
| 31659TEJ0 | FLIT Series 2005–3 | WesCorp |
| 31659TEK7 | FLIT Series 2005–3 | WesCorp |
| 437084QZ2 | HEAT 2005–9 | WesCorp |
| 43709NAE3 | HEAT 2006–7 | U.S. Central |
| 43709QAD8 | HEAT 2006–8 | U.S. Central |
| 43709QAE6 | HEAT 2006–8 | U.S. Central |
| 43709QAG1 | HEAT 2006–8 | U.S. Central |
| 74924XAC9 | RASC Series 2007–EMX1 Trust | U.S. Central |
| 225470B28 | ARMT 2006–1 | WesCorp |
| 00703QBF8 | ARMT 2006–3 | WesCorp |
| 00703AAG2 | ARMT 2007–2 | WesCorp |
| 80556AAD9 | SAST 2006–3 | U.S. Central |

Credit Suisse's motion to dismiss, to the extent based on timeliness, is denied with respect to plaintiff's federal claims based on the other eight certificates.

## IV. Sufficiency of Allegations

Credit Suisse also challenges the sufficiency of plaintiff's allegations. The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic,* 550 U.S. at 555, 127 S.Ct.

1955. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.,* and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan,* 453 F.3d 1244, 1252 (10th Cir.2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Plaintiff's central claim is that defendants in their offering documents represented that certain underwriting guidelines were generally followed, with certain exceptions, by the loan originators, when

---

**12.** Plaintiff did file this suit within three years of becoming conservator for Southwest, but plaintiff has not asserted any state-law claim on behalf of Southwest.

in fact some originators systematically abandoned or disregarded those guidelines. As a part of that claim, plaintiff also asserts that certain ratios for the loans were significantly understated and that owner-occupancy levels were misstated. In support of that claim, plaintiff alleges, among other things, (1) that default rates surged for these loans after the sale; (2) that these originators had high "originate-to-distribute" (OTD) rates, giving them less incentive to adhere to the underwriting standards; (3) that losses exceeded those expected; (4) that credit ratings for the certificates went from mostly AAA to below investment grade; and (5) that revelations show abandonment of the guidelines by originators, in the industry generally and with respect to six specific originators, as shown by media and government reports and other lawsuits and investigations.

### A. Abandonment of Underwriting Guidelines

■ With respect to plaintiff's central claim, Credit Suisse argues that these omissions were not material and that the disclosures adequately informed of risks from these investments, including by warning that some loans could be nonconforming and that exceptions had been made. Plaintiff responds that such warnings do not disclose that the guidelines were systematically ignored. The Court rejects this argument by Credit Suisse, for the same reasons set forth by Judge Rogers in rejecting this argument in *RBS. See*

*RBS*, 900 F.Supp.2d at 1254–57. The Court concludes that plaintiff has stated a plausible claim in this regard, and the Court does not believe that the public materials cited by Credit Suisse compel the conclusion, at this pleading stage, that the alleged omissions could not have been material as a matter of law.

Credit Suisse also argues that the complaint does not sufficiently tie the allegations of general malfeasance by originators in general to the particular certificates and loans in this case. Again, the Court is persuaded by the conclusions reached by Judge Rogers in *RBS. See id.* at 1251–55. In that case, Judge Rogers rejected a similar argument that the allegations were too conclusory about the industry in general, at least with respect to certificates with originators that were specifically alleged to have abandoned underwriting standards. Judge Rogers did dismiss certain claims based on loans involving originators for whom there were no specific allegations other than OTD rates. In the instant case, plaintiff makes allegations about six specific originators. Moreover, as alleged by plaintiff, each of the eight surviving certificates (after the Court's limitations analysis) involved at least one of those six specific originators. Accordingly, applying Judge Rogers's analysis here, none of the remaining claims would be subject to dismissal on this basis.[13] The Court concludes that plaintiff has stated plausible claims, with sufficient specificity, based on the remaining eight certificates.[14]

---

13. Thus the Court need not decide in this case whether additional allegations absent in *RBS*, including forensic analyses tied to specific certificates, would be sufficient for claims based on certificates that did not involve one of the six specific originators.

14. The Court rejects Credit Suisse's specific argument that plaintiff may not rely on facts taken from other lawsuits or investigations that plaintiff itself has not verified. *See RBS*,

900 F.Supp.2d at 1260–61 (rejecting similar argument). Also for the reasons cited by Judge Rogers, the Court rejects Credit Suisse's "Hobson's Choice" argument that plaintiff should not be permitted to argue that it didn't have enough information to state a claim until 2008 or later (for purposes of the statute of limitations), while at the same time relying on statistics and information and lawsuits from earlier to state its claims. *See id.* at 1262.

## B. LTV and Other Ratios

■ Credit Suisse also seeks dismissal of plaintiff's claims to the extent that they rely on alleged omissions or misleading statements relating to loan-to-value (LTV) and similar ratios. Credit Suisse argues that the disclosures warned of borrower fraud and that these ratios were disclosed as estimates with no guarantees that those levels would stay the same. Plaintiff's claim, however, is that appraisals were significantly higher than they should have been. The Court agrees with Judge Rogers that plaintiff's statement of these claims is not too conclusory, for the same reasons stated by Judge Rogers with respect to plaintiff's general claim involving the abandonment of underwriting guidelines. *See id.* at 1257–59. The Court does not agree with Credit Suisse that plaintiff was required at this stage to plead facts linking this behavior regarding the ratios to specific loans making up the certificates.

Credit Suisse also argues that an appraisal is an opinion that cannot supply the basis for a claim unless the speaker knew it was false or did not really have that opinion. Plaintiff responds that some LTV ratios are based on fact, not opinion, because they are based on actual sales prices instead of appraisals; that the speaker may not have believed it, as plaintiff has alleged; and that the originators may not have believed and in fact did inflate the figures. The Court agrees with plaintiff and Judge Rogers that plaintiff's theories are at least plausible for purposes of stating a claim. *See id.* at 1257–58. For the same reason, the Court rejects Credit Suisse's argument that plaintiff's forensic analysis is merely an alternative opinion

that does not bear on whether the prior opinions (appraisals) were misstated; plaintiff's allegations are not based solely on that analysis, and the Court concludes that plaintiff has stated a plausible claim here, with sufficient detail.

## C. Owner–Occupancy Rates

■ Finally, Credit Suisse seeks dismissal of plaintiff's claims to the extent that they rely on alleged omissions or misleading statements relating to owner-occupancy rates. Credit Suisse argues that the disclosures did not predict any future owner-occupancy rates and that they disclosed that their present rates were based on information from the borrowers, which could include misrepresentations. The Court rejects this basis for dismissal.

Credit Suisse relies primarily on the opinion in *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010). In that case, the court dismissed claims based on owner-occupancy ratios (under a heightened pleading standard under Rule 9(b) and the PSLRA) because the offering documents explained that owner-occupancy ratios were based on representations by the borrowers. *See id.* at *9. That conclusion, which was not based on any citation to authority, is not persuasive, however, for the reason that the *Footbridge* court did not consider the issue of a defendant's liability for repeating third-party misrepresentations under the Securities Act.[15]

Instead, the Court finds persuasive the rejection of this same argument by the court in *FHFA v. UBS Americas, Inc.*, 858 F.Supp.2d 306 (S.D.N.Y.2012). In *FHFA*, the court noted that the Securities Act

---

**15.** The other federal case cited by Credit Suisse, *Massachusetts Mutual Life Insurance Co. v. Residential Funding Co.*, 843 F.Supp.2d 191 (D.Mass.2012), merely relied on *Footbridge. See id.* at 204–05. The two state-court cases cited by Credit Suisse did not

contain any citations to supporting authority. Like *Footbridge*, these cases did not address the issue of a defendant's liability for repeating third-party misrepresentations, and therefore they are not persuasive.

imposes strict liability for any material misrepresentation or omission, and the court concluded that the defendant's position was incompatible with such liability, as follows: "If defendants were correct that a party could transform the Securities Act's strict liability regime into one that required scienter simply by attributing factual information in the offering materials to a non-defendant third-party, this purpose [behind the strict liability standard] would be significantly undermined." *See id.* at 329. The court further found the defendant's position to be inconsistent with the structure of the Securities Act, which allows a defendant to assert its due diligence regarding third-party information as an affirmative defense—which defense could not form the basis for a motion under Rule 12(b)(6). *See id.* (citing, inter alia, 15 U.S.C. § 77k(b)(3)). The court concluded: "It is thus plain from the statutory structure itself that a Securities Act defendant cannot simply claim that she blindly reported information given to her by third parties and thereby avoid liability for inaccuracies that made their way into the offering materials." *See id.* at 330.

The Court agrees with the *FHFA* court that the Securities Act's strict liability standard allows for a claim based on a defendant's passing along misstatements by third parties. Plaintiff has plausibly stated such claims here concerning owner-occupancy rates. Accordingly, the Court denies Credit Suisse's motion to dismiss those claims.[16]

IT IS THEREFORE ORDERED BY THE COURT THAT the Credit Suisse defendants' motion to dismiss (Doc. # 23) is **granted in part and denied in part.** The motion is granted with respect to all of plaintiff's state-law claims, as well as plaintiff's federal claims based on 12 particular certificates, as set forth herein, which are time-barred. The motion is denied with respect to plaintiff's federal claims based on the other eight certificates.

IT IS SO ORDERED.

### *MEMORANDUM AND ORDER*

Plaintiff National Credit Union Administration Board brings this suit as conservator and liquidating agent of three credit unions who purchased residential mortgage-backed securities ("certificates"). Plaintiff brings claims under the federal Securities Act of 1933 and California and Kansas statutes, based on alleged untrue statements or omissions of material facts relating to each certificate by defendants, who sold, underwrote, or issued the certificates. By Memorandum and Order dated April 8, 2013 (Doc. # 47–1), the Court dismissed some of plaintiff's claims as time-barred. *See National Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC,* 939 F.Supp.2d 1113, 2013 WL 1411769 (D.Kan. Apr. 8, 2013). As a part of that ruling, the Court held that the three-year limitations period for claims by plaintiff as conservator or liquidator, pursuant to the so-called Extender Statute, 12 U.S.C. § 1787(b)(14), could not be extended by a tolling agreement between the parties. *See id.* at 1124–27, at *9–11.

On April 29, 2013, the Court granted plaintiff's oral motion for reconsideration of that particular holding, and it allowed additional briefing on that issue by the parties to this case and other defendants against whom plaintiff has asserted similar claims in this Court. The Court also allowed the Federal Deposit Insurance Corporation (FDIC), which is subject to a similar Extender Statute, to file an amicus

---

**16.** The Court also rejects Credit Suisse's challenge to plaintiff's alleged analyses of actual owner-occupancy rates; the Court is not persuaded that the plaintiff may not rely on such analyses in stating plausible claims.

brief on the issue. Having considered these supplemental arguments, the Court reaffirms its prior holding that the Extender Statute's limitations periods may not be tolled by agreement.

1. The Court's original holding was based on the following reasoning, *see id.*: The Supreme Court's opinion in *Mid State Horticultural Co. v. Pennsylvania Railroad Co.*, 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943), in which the Court refused to allow a particular statutory limitations period to be waived by agreement, taught that if a statutory limitations period was intended to extinguish the right to sue, that period may not be extended or waived by agreement. The Extender Statute includes just such a limitations period, as the statute operates in a similar fashion to the three-year limitations period that it displaces, which the Tenth Circuit has indicated represents a statute of repose that extinguishes the right the sue. Moreover, Congress's intent is most clearly articulated by the text of the Extender Statute, which prescribes a particular limitations period "[n]otwithstanding any provision of any contract." *See* 12 U.S.C. § 1787(b)(14)(A). The Court rejected plaintiff's argument that Congress intended by that language to trump a contractual provision setting a particular limitations period, but not a contract entered into after the Extender Statute's limitations period has already begun to run (such as a tolling agreement entered into by plaintiff as conservator). The Court concluded that the text of the statute is not so limiting, as it refers to "any provision of any contract." The Court also rejected plaintiff's argument based on equitable estoppel, as allowing plaintiff to enforce its tolling agreement pursuant to that doctrine would undermine Congress's intent to set an outer limit that may not be extended by agreement and would render the "notwithstanding" limitation meaningless.

2. Plaintiff first argues that the "notwithstanding" language in the Extender Statute should not be interpreted to refer to tolling agreements. Plaintiff argues that such language refers to agreements that change or conflict with the Extender Statute's limitations period. *See, e.g., Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) (use of such a "notwithstanding" clause signals the drafter's intention that the provision of that law override conflicting provisions of other laws). Plaintiff further argues that the tolling agreement does not change or conflict with the Extender Statute's limitations period because it does not set forth a different limitations period, but instead merely dictates which days should be counted in applying the Extender Statute's limitations period.

The Court rejects this argument. The Extender Statute sets an outside limit for the timely filing of claims by plaintiff, and plaintiff's tolling agreements would alter that limit; thus, tolling agreements do conflict with the Extender Statute's limitations period and therefore must fall within the "notwithstanding" phrase's scope. Plaintiff's strained attempt to distinguish tolling agreements as merely dictating the method of calculation of the applicable limitations period is not persuasive. A preconservatorship agreement to count only every other week against the applicable limitations period, for example, would certainly be viewed as conflicting with the Extender Statute, which would trump that prior agreement pursuant to its "notwithstanding" language. So too must the Extender Statute override a tolling agreement that similarly purports to extend the statute's limitations period by excluding some days in calculating that period.

Plaintiff has not offered any other reasonable interpretation of the "notwithstanding" language. That language, given

its ordinary meaning, broadly encompasses any other agreement. There is no basis to restrict that language only to certain types of agreements, such as agreements that shorten the applicable limitations period (as opposed to agreements than lengthen the period) or agreements executed pre-conservatorship (as opposed to agreements executed by plaintiff as conservator).[1] The Court concludes that the plain language of the Extender Statute unambiguously prohibits alteration of its limitations periods by any agreement, including a tolling agreement.

3. Plaintiff also suggests that the Extender Statute's purpose and legislative history weigh in favor of its interpretation. In that regard, plaintiff notes that FIR-REA, the act containing the Extender Statute, was intended to allow it (and the FDIC) to protect the public by pursuing claims on behalf of failed institutions, as evidenced by the various provisions granting plaintiff power to enter into or repudiate contracts. Plaintiff also cites legislative history in the form of the statement by a sponsor of the act, Senator Donald Riegle, that its limitations provisions "should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." *See* 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989); *see also UMLIC–Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir.1999) (quoting this statement and noting that in interpreting a statute, substantial weight is accorded to statements by its sponsors concerning its purpose and scope).

The Court concludes that a general policy of the statute to aid plaintiff and Senator Riegle's statement are not sufficient to overcome the plain language of the statute. That policy and statement certainly do not suggest a Congressional intent to give plaintiff unfettered latitude in asserting claims, as the Extender Statute clearly and unambiguously imposes a deadline for such claims, which must be enforced in accordance with its terms. The Extender Statute also plainly and unambiguously imposes that deadline "notwithstanding any provision of any contract," including a tolling agreement, and that language too must be enforced.

4. Plaintiff next argues that the Extender Statute's "notwithstanding" language should be interpreted against the backdrop of the general rule that a limitations period may be waived. The Court rejects this argument as well. As noted above, in *Mid State* the Supreme Court indicated that a statutory limitations period may not be waived or tolled if Congress intended such a prohibition in enacting the limitations period. Plaintiff again seeks to distinguish Mid State and confine it to the particular statute at issue in that case. Plaintiff, however, has not addressed the key inquiry from that case—whether Congress intended by the limitations period to extinguish the right to sue instead of merely barring the remedy after that period. As this Court previously concluded, the "notwithstanding" language provides clear evidence that Congress intended that the right to sue be extinguished at the expiration of the limitations period imposed by the Extender Statute.

5. Plaintiff also takes issue with the Court's conclusion that the Extender Stat-

---

**1.** 'Plaintiff notes that courts have held that the Extender Statute, by virtue of the "notwithstanding" language, overrides a shorter limitations period agreed by the parties. That

fact, however, does not mean that the Statute does not also override agreements for longer limitations periods.

ute is akin to a statute of repose that extinguishes the right to sue. As the Court previously reasoned, the Tenth Circuit has indicated that Section 13 (the limitations statute displaced by the Extender Statute) contains a statute of repose, and the Extender Statute's three-year limitations period is similar to that statute of repose because it sets an outside date for the filing of claims. Plaintiff argues that Section 13 does not call its three-year limitations period a "statute of repose" and that the Extender Statute should not be considered a statute of repose just because it displaces a statute of repose. Plaintiff also argues that statutes of repose may sometimes be waived. Neither plaintiff nor the FDIC, however, has attempted to analyze whether Section 13 or the Extender Statute extinguishes the right to sue or merely bars the remedy—the relevant inquiry under *Mid State* identified by this Court in its previous opinion. Thus, plaintiff has not indicated how the Court erred in its analysis. Moreover, the Extender Statute's "notwithstanding" language provides additional evidence that Congress intended to extinguish the right to sue. The Court does not offer any opinion concerning whether statutes of repose may be tolled by agreement as a general rule; the Court merely holds that this particular statute may not be tolled by agreement, pursuant to the analysis indicated in *Mid State*.[2]

6. Plaintiff and the FDIC argue that their interpretation of the Extender Statute to allow tolling by agreement should be granted some deference by this Court. Although neither agency has cited any such formal interpretation that it has issued, they note that they have used such tolling agreements for many years. The FDIC argues for *Skidmore* deference, under which "[t]he weight of such a judgment [by an agency] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The Tenth Circuit has noted, however, that courts do not generally defer to an agency's interpretation of a statute lying outside that agency's particular expertise, and that "an agency's interpretation of a statute merits deference under *Skidmore* only in proportion to its power to persuade." *See Hydro Resources, Inc. v. U.S. E.P.A.*, 608 F.3d 1131, 1146 & n. 10 (10th Cir.2010) (internal quotations omitted). In this instance, the Court will not defer to the interpretation of the Extender Statute urged by plaintiff and the FDIC. Those agencies do not have any particular expertise with respect to the interpretation of statutory limitations periods. In addition, as noted above, the Extender Statute unambiguously precludes reliance on agreements to alter its limitations periods; thus, the positions of plaintiff and the FDIC have no persuasive value. The Extender Statute is clear, and the fact that plaintiff and the FDIC have

---

**2.** Plaintiff cites *In re Lehman Brothers Securities and ERISA Litigation*, 2012 WL 6584524 (S.D.N.Y. Dec. 18, 2012), in which the court rejected an argument based on *Mid State.* The Court does not find that case persuasive on this issue. That court did not analyze whether the statute at issue extinguished the right to sue, but instead it merely distinguished the policy furthered by the statute in *Mid State. See id.* at *2. Moreover, the *Leh-*

*man Brothers* court was considering the tolling of Section 13, the underlying statute of limitations, which does not contain the "notwithstanding" language that is key to this Court's ruling concerning the Extender Statute. *See id.* This Court does not offer any opinion here concerning whether Section 13's limitations periods may be tolled by agreement.

been using tolling agreements in contravention to the statute does not compel or weigh in favor of a contrary interpretation. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (if Congressional intent is clear, a court does not defer to an agency and must give effect to that unambiguously expressed intent).

7. Plaintiff again suggests that defendants should be equitably estopped from arguing that the tolling agreement they executed may not be enforced. Plaintiff cites *Montoya v. Chao,* 296 F.3d 952 (10th Cir.2002). In that case, however, the Tenth Circuit merely held that a particular statutory limitations period was not jurisdictional and was therefore subject to equitable tolling. *See id.* That holding is not relevant to the question whether equitable estoppel is appropriate in this case with this statute. The Court previously concluded, based on precedent, that the Tenth Circuit would likely not permit equitable estoppel in this instance in which application of that doctrine would effectively eviscerate the "notwithstanding" language in the Extender Statute. Plaintiff has not addressed that Tenth Circuit precedent or that potential evisceration; thus, plaintiff has not persuaded the Court that it erred in its original conclusion.

8. Plaintiff asserts for the first time that even without recourse to the tolling agreement, its state law claims are timely under the Extender Statute's alternative limitations period of "the period applicable under State law." First, this issue falls outside of the Court's reconsideration of the issue of the enforcement of the tolling agreement, and thus this argument by plaintiff is improper. Moreover, plaintiff's argument lacks merit. Under the Extender Statute, the applicable five-year state-law limitations period would run from the violation or purchase date, not

from the date of plaintiff's appointment as conservator (which triggers the Extender Statute's three-year limitations period). In addition, the "notwithstanding" language applies to either alternative limitations period under the Extender Statute; thus, plaintiff may not use the tolling agreement to extend the applicable state-law limitations period. Plaintiff filed this suit more than five years after the certificates at issue were purchased; accordingly, plaintiff's state-law claims are not timely under the applicable state limitations periods.

9. Plaintiff also repeats its original argument that the Extender Statute's three-year limitations period should be measured from the date of its appointment as liquidator for the credit unions and not from its earlier conservator appointment date. This argument too improperly exceeds the scope of the reconsideration granted by the Court. In addition, plaintiff's argument lacks merit, for the reasons stated by the Court in its original opinion. Plaintiff cites to *UMLIC,* in which the Tenth Circuit held that the three-year period could be reset by the FDIC's appointment as conservator to a second savings and loan that had acquired the asset at issue. *See* 168 F.3d 1173. The Tenth Circuit did not analyze the particular language involving the dates of appointment as conservator and liquidator, however. The statute provides that either appointment triggers the three-year period. Thus, plaintiff's three-year period in this case must be measured from the date of its appointment as conservator for the credit unions.

10. In summary, the Court is not persuaded that it erred in its previous ruling, and it reaffirms that ruling that plaintiff's tolling agreement with defendants is not effective in extending the applicable three-

year limitations period under the Extender Statute.

IT IS SO ORDERED.